JOHN M. CECERE et al., Respondents, v CELIA-VIRGINIA F. HAR-QUAIL et al., Appellants.

Fourth Department, November 7, 1984

### APPEARANCES OF COUNSEL

*Bond & McDonald* (*Kevin McDonald* of counsel), for appellants.

*Michael J. Roulan* for respondents. (No brief or appearance.)

### OPINION OF THE COURT

HANCOCK, JR., J. P.

In *Allanson v Cummings* (81 AD2d 16) we held that where the owner of a vehicle totally destroyed in an accident is unable to obtain a suitable replacement immediately, he may recover damages for loss of use measured by the "reasonable rental value of a substitute vehicle for a reasonable period of time until a replacement can be made" (*Allanson v Cummings, supra,* p 21). In so doing we followed precedents in a growing number of jurisdictions allowing recovery in such situations (see n 1, *infra*). The question here is whether an owner can recover for the period between the date of the accident and the time when the defendant's insurer notifies the plaintiff that it finds the loss to be total, upon the ground that until that time the plaintiff is "unable to obtain a replacement vehicle within the meaning of *Allanson v. Cummings [supra]*". We hold that he may not.

The proof in this nonjury trial was as follows. On January 8, 1981, an automobile owned by plaintiff Linda Cecere and driven by plaintiff John Cecere was totally destroyed in a collision with a vehicle driven by defendant Harquail and rented from defendant Avis Rent-A-Car System (Avis). (That the accident was due entirely to Harquail's negligence is not now in dispute.) On that same day, the body shop to which the Cecere vehicle had been towed completed an estimate form stating: "It will cost more to fix car than it is worth." The next day, John Cecere rented a substitute vehicle. The Ceceres' insurance representative sent a copy of the estimate form to Avis on January 12, 1981. Neither Avis nor its insurer responded until March 23, 1981, when the insurer notified John Cecere that Avis approved settlement of $4,065 for the value of the automobile but refused to pay the rental cost of the substitute vehicle. On receipt of this notice, John Cecere, who had made no attempt to purchase a replacement, returned the rental car.

The court awarded the stipulated amount for the value of the vehicle and $2,900.14, the actual cost of rental of the substitute vehicle from January 9, 1981 until March 23, 1981, stating: "The court finds that plaintiff was unable to obtain a replacement vehicle within the meaning of *Allanson v Cummings* [*supra*] until he was aware that defendant agreed that the loss was total and what cash settlement he could expect." There should be a reversal.

In *Allanson v Cummings* (*supra*) this court declined to follow the ancient common-law rule that, although the owner of a damaged chattel may recover for loss of its use during the time required for repairs, he may not recover if the chattel is destroyed (see, generally, *Dennis v Ford Motor Co.*, 332 F Supp 901, 905, affd 471 F2d 733; *Reis v Long Is. R. R. Co.*, 88 App Div 611; 7C Warren, Negligence [1982 ed], ch 18, § 1.01; Fuchsberg, 10 Encyclopedia of NY Law, Damages, § 875). The rule, based on the assumption that because the owner can replace the destroyed chattel immediately he suffers no loss beyond its value, "presupposes the existence of a broad market with frequent trading in articles of an identical character with the property lost" (7C Warren, Negligence [1982 ed], ch 18, § 1.02, p 34). In *Allanson,* we noted that in today's market immediate replacement of a vehicle is not always possible and observed that where, due to market conditions, the owner cannot immediately replace a destroyed vehicle, he has been deprived not only of its value but of its use. We saw no reason for the common-law distinction permitting recovery if the owner's car is damaged and must be fixed but not if it is crushed beyond repair and must

be replaced. In either case, whether it be for the time the car is in the shop or the time it takes to find a suitable replacement in the marketplace,[1] the owner has been deprived of the use of his vehicle.

The court here has misapplied *Allanson (supra)* in making the extent of plaintiffs' damages for loss of use dependent not upon objective proof of availability of a suitable replacement in light of market conditions but upon such factors as the insurer's delay in inspecting and placing a value on the vehicle and plaintiffs' resultant financial inability to replace it. The burden of establishing all elements of their damages, including the fact that the car was a total loss, is on plaintiffs — not on defendant or its insurer. While defendant or the insurance company may obtain an appraisal of plaintiffs' vehicle and make an offer of settlement, they are not obliged to do so. Accordingly, damages cannot be predicated on such irrelevant considerations as what settlement the plaintiffs might expect or the defendant's insurer's inaction or lack of cooperation.[2]

---

1. Almost all of the cases permitting recovery for loss of use of a destroyed vehicle measure the period of compensable loss from the date of the accident until the time the owner could reasonably replace the vehicle in view of actual market conditions. See, e.g., *Guido v Hudson Tr. Lines* (178 F2d 740 [unavoidable delay in replacing truck and bulldozer due to postwar shortages; owner entitled to special damages for loss of use]); *Atlantic Aviation Corp. v United States* (456 F Supp 121, 126 [period of loss of use measured until time could obtain delivery of substitute airplane]); *Dennis v Ford Motor Co.* (332 F Supp 901, affd 471 F2d 733 [a strike at Ford Motor Co. prevented plaintiff from replacing tractor immediately; plaintiff permitted to recover cost of renting tractor until he could obtain replacement]); *Livingston v Knight* (90 Misc 2d 941 [plaintiff diligently attempted to and did purchase a replacement vehicle and was entitled to recover loss of use for period required for replacement]); *Colonial Motor Coach Corp. v New York Cent. R. R. Co.* (131 Misc 891, 894-895 [a plaintiff should be permitted to recover damages for loss of use of destroyed bus until it could reasonably purchase and get delivery of suitable replacement]); *Reynolds v Bank of Amer.* (53 Cal 2d 49 [upon proof that aircraft similar to the one destroyed is not immediately available for purchase, plaintiff should be permitted to recover the reasonable rental value of a substitute]); *New York Cent. R. R. Co. v Churchill* (140 Ind App 426 [allowed recovery for reasonable rental value of tractor trailer unit for reasonable amount of time it would take plaintiffs to replace destroyed unit]); *Weishaar v Canestrale* (241 Md 676 [reasonable cost of rental of substitute permitted where plaintiff unable to get delivery of replacement truck for five weeks because body had to be specially fabricated]); see, generally, Ann., 18 ALR3d 497, 519-521; Restatement, Torts 2d, § 927; but see *Wenz v Leon* (90 Misc 2d 85 [allowing recovery for loss of use until the date defendants' insurers agreed that the vehicle was a total loss]); *Bernard v Fidelity & Cas. Co.* (186 So 2d 904 [La] [owner may recover for loss of use of vehicle during reasonable time as is required to determine whether it is in fact a total loss]).

2. The action here is against Avis and Harquail — not Avis' insurer. In the context of a jury trial, proof of the fact that a defendant is insured is

The judgment should be modified by striking the award of $2,900.14 for loss of use of the destroyed vehicle and otherwise affirmed.

DENMAN, J. (concurring). In *Allanson v Cummings* (81 AD2d 16, 21), we held that, where a motor vehicle is totally destroyed, "plaintiff must initially prove that for a stated period he was in fact unable to obtain a replacement vehicle. Upon such proof plaintiff may then recover damages for the loss of the destroyed vehicle's use which is the reasonable rental value of a substitute vehicle for a reasonable period of time until a replacement can be made."

While I agree with the majority that plaintiff here is not entitled to recover, I ground my opinion on the fact that his proof fell short of the standard established in *Allanson (supra)*. Plaintiff testified that he rented a replacement vehicle immediately after the accident and that he did not attempt to purchase a replacement. He admitted that he owned a business, had money in the bank and owned two racehorses but testified that he wanted to use the money to buy a house. Plaintiff thus failed to prove first, that he was unable to obtain a replacement vehicle and second, that the rental period was reasonable.

I cannot agree with the majority that an insurer's inordinate delay in adjusting a claim coupled with a plaintiff's inability to purchase a replacement can never serve as a predicate for recovery under the rule of *Allanson (supra)*.

CALLAHAN, J. (dissenting). I cannot agree to deny this claimant any recovery for loss of use. Such a travesty of justice was rectified in *Allanson v Cummings* (81 AD2d 16). Therein, this court rejected the harsh common-law rule which denied any damages for loss of use of a motor vehicle which is damaged beyond repair in an accident caused by the negligence of another. We held that the owner of such a vehicle damaged beyond repair is entitled to the rental value of a substitute vehicle for a reasonable time until replacement of the destroyed vehicle can be made. To deny plaintiff any recovery for loss of use under the circumstances herein appears to resurrect the old common-law rule. Further, it will stifle any incentive for an

"incompetent and so dangerous as to require a reversal" (*Simpson v Foundation Co.*, 201 NY 479, 490; see Siegel, Supplementary Practice Commentary, McKinney's Cons Laws of NY, Book 7B, CPLR 4110, 1964-1984 Supp Pamph, p 92). Any suggestion that an action against an insured defendant may be treated as a direct action against the defendant's insurer (see *Donawitz v Danek*, 42 NY2d 138, 142) has been negated in this State (see *Gager v White*, 53 NY2d 475, overruling *Donawitz v Danek, supra*, and *Seider v Roth*, 17 NY2d 111, in view of *Rush v Savchuk*, 444 US 320).

insurance carrier to promptly adjust a loss for which it is liable and is prejudicial by imposing an undue burden upon an innocent victim. Under the majority decision, it is foreseeable that an individual whose motor vehicle has been totaled as a result of another's negligence will be forced to purchase a replacement vehicle, for which there may not be available funds, only to learn at a later date that the negligent tort-feasors' carrier does not deem the loss to be total or else rent a car until such time as the carrier acts and then be denied recovery of the reasonable rental payment. Either result is contrary to the policy established in *Allanson v Cummings (supra)*. I view the decision of the trial court to be consistent with the rationale enunciated by Justice Cardamone therein. We cannot ignore the realities of claims adjusting. The record demonstrates that plaintiff had limited funds as he was in the process of purchasing a house. The court found sufficient proof "that for a stated period he was in fact unable to obtain a replacement vehicle. Upon such proof plaintiff may then recover damages for the loss of the destroyed vehicle's use which is the reasonable rental value of a substitute vehicle for a reasonable period of time until a replacement can be made" (*Allanson v Cummings, supra,* p 21).

Accordingly, the judgment should be affirmed.

DOERR and MOULE, JJ., concur with HANCOCK, JR., J. P.; DENMAN, J., concurs in an opinion; CALLAHAN, J., dissents and votes to affirm in a separate opinion.

Judgment modified, and as modified affirmed, without costs, in accordance with opinion by Hancock, Jr., J. P.