466 So.2d 283 (1985)
FORESIGHT ENTERPRISES, INC., John Ostgard and CKN Airways, Inc., Appellants,
v.
LEISURE TIME PROPERTIES, INC., Robert W. Browning, and D.R. Deloach, Appellees.
Nos. 82-1499, 83-334.
District Court of Appeal of Florida, Fifth District.
February 21, 1985.
Rehearing Denied March 28, 1985.
*284 Eric A. Latinsky, Daytona Beach, for appellants.
John W. Tanner, of John W. Tanner, P.A., Tanner, Lambert & Miller, Daytona Beach, for appellees.
SHARP, Judge.
John Ostgard, Foresight Enterprises, Inc. (Foresight), and CKN Airways (corporations owned and controlled by Ostgard), appeal from a judgment assessing them with $45,650.00 in damages for the wrongful detention of a 1961 twin engine Beech Baron aircraft for a period of some twenty-eight months. The jury expressly found that the plane was worth $28,110.00 in April of 1979  the date the wrongful detention began. The plane was returned to appellees Robert Browning, D.R. DeLoach, and Leisure Time Properties, Inc. (Leisure Time), (Browning's and DeLoach's corporation) on September 11, 1981, after a hearing in a replevin suit to determine appellees' right to possession. The damage issue was heard separately and decided by a jury.
Appellants raise many issues on appeal, but we think only the question of whether the evidence in the record sustains the amount of damages awarded has merit. Ostgard argues that the damage award was grossly excessive because the record shows appellees recovered the aircraft, which has enhanced in value since its wrongful taking, and the jury's award cannot be sustained as compensation for appellees' loss of use of the aircraft over the period of wrongful detention and cost of repairs.[1] We agree.
Leisure Time, through its principals, Browning and DeLoach, entered into an agreement with Foresight on November 8, 1979, to transfer various parcels of land located in Lafayette County, Florida, and several agreements for deed in exchange for the Beech Baron and other items of equipment. Leisure Time was unable to furnish Foresight with all the releases and satisfactions within the time required by the agreement, and appellants sought to prove at the non-jury hearing that various verbal warranties concerning the agreements for deed had been breached by Leisure Time. However, the trial court found that the parties did not make time of the essence in their understanding and performance of the agreement, and it ruled that Leisure Time was entitled to possession of the aircraft.[2] The record contains *285 an incomplete transcript of the hearings held to determine appellees' right to possess the aircraft. Accordingly, we will not overturn the trial judge's findings nor his construction of the documents. Jackson v. Granger Lumber Company, 275 So.2d 555 (Fla. 1st DCA 1973), Gallion v. Belk, 180 So.2d 349 (Fla. 1st DCA 1965).
Because of claimed breaches of the agreement, Ostgard took possession of the Beech Baron in April of 1979, and he refused to return it to appellees. Ostgard used the plane and he removed it to Minnesota. After appellees filed a replevin suit and obtained a court order, appellants returned the plane to Flagler County on September 4, 1980. It was chained down by the sheriff, upon direction by the court.
Appellees did not post a replevin bond to obtain delivery of the plane to them pending a determination of their right of possession as they might have done pursuant to section 78.068(3), Florida Statutes (1983). When appellees obtained possession of the plane on September 11, 1981, they discovered it had been vandalized and damaged. The evidence was in dispute as to when the damages occurred and inconclusive as to who did it. After reviewing the record of the hearings before the judge and the jury trial, we cannot say the court erred in instructing the jury that damages could include repair costs, and loss of use of the plane for the whole twenty-eight months the plane was not in appellees' possession.
Nor do we think the first trial judge erred in making such rulings before refusing himself. The record demonstrates that the recusal followed failures on the part of appellants' counsel to appear for hearings and for trials, and notices were mailed. We have no record to review concerning the explanations of appellants' counsel, nor evidence that may have been presented to the court. Accordingly, we can only assume the trial judge's patience was frayed, and that upon motion of appellants, he *286 properly recused himself from acting further in the case. However, that is no basis to invalidate his rulings and findings made in the case prior to his recusal. Schwartz v. Schwartz, 431 So.2d 716 (Fla. 3rd DCA 1983), Coastal Petroleum Company v. Mobil Oil Corporation, 378 So.2d 336 (Fla. 1st DCA 1980).
If a jury verdict can be sustained on any theory, the appellate court must sustain it. Heitman v. Davis, 127 Fla. 1, 172 So. 705 (1937); Holstun v. Embry, 124 Fla. 554, 169 So. 400 (1936); Florida Trust & Banking Company v. Consolidated Title Company, 86 Fla. 317, 98 So. 915 (1923). Accordingly, we have reviewed this record with all deference to the jury's conclusions.
This suit was brought pursuant to section 78.01, which provides:
Any person whose personal property is wrongfully detained by any other person or officer may have a writ of replevin to recover said personal property and any damages sustained by reason of the wrongful taking or detention as herein provided... .[3]
It is well established in Florida that in a statutory replevin suit, a party may recover not only the object sought to be replevied, but also damages for the loss of its use.[4] This is in contrast to a suit for conversion where recovery is limited to the value of the object at the time of taking or destruction, plus interest at the legal rate.[5]
Further, the fact that a jury awards damages in excess of the value of the item replevied when the object has been returned to the rightful owner, does not, by itself, require reversal.[6] However, there must be sufficient basis in the record to support such a damage award. Evans v. Kloeppel, 72 Fla. 267, 73 So. 180 (1916); Wolf v. Buchman, 425 So.2d 182 (Fla. 3rd DCA 1983); Hart Land & Cattle Company, Inc. v. Reeves Steel, Inc., 309 So.2d 611 (Fla. 1st DCA 1975); Butler v. Mirabelli, 179 So.2d 868 (Fla. 2d DCA 1965); Harwell v. Wilder, 247 So.2d 90 (Fla. 2nd DCA 1971).
One major item of damages sought to be proven in this case was loss of use value. We do not think the record in this case establishes a proper basis for such an award. An award based on loss of use value may be sustained in a replevin suit, although appellate courts in Florida have more often held it was not established by the evidence. See Ocala Foundry & Machine Works v. Lester, 49 Fla. 199, 38 So. 51 (1905).
The evidence on this item of damage was appellees' testimony that they would have used the aircraft forty hours per month, had it been in their possession. However, they were not in the business of chartering or renting their plane to others, and this aircraft lacked the equipment required by the F.A.A. for a rental aircraft. Further, there was no evidence presented that this aircraft could have been chartered or rented out for forty hours per month. To the contrary, the evidence was that potential lessees of small planes at the field where the Beech craft was based, chartered much less expensive, or cheaper planes. No operator who testified at the trial had a plane comparable to the Beech Baron for charter.
Appellees argues that loss of use value could be based on generalized testimony *287 that the Beech Baron could be chartered for $168.00 to $175.00 per hour. However, this figure did not take into account costs and maintenance on the plane, and other expenses. Jack Hudson, the base operator at the Palatka Airport who testified for appellees, said that an owner's net profit for chartering or renting aircraft was only $5.00 to $8.00 per hour. His figures were based on lighter, less expensive planes, however. See Ocala Foundry.
We do not think the record established any basis for the jury to determine what amount of time the market demand to rent such an airplane would have been. The owner's testimony that he would have used it 40 hours per month is not equivalent to this requirement. C. McCormick, Law of Damages p. 479 (1935); Evans; Butler. Further, the profit which could have been earned, had such a charter market been established, was not proven either. Therefore, a damage award including loss of use damages was not proper in this case. However, where such an element cannot or has not been proven, courts will allow it to be measured by interest at the legal rate based on the value of the plane when it was wrongfully taken, over the time it was withheld from the rightful owner. Wolf; Harwell.
The second item of damages sought to be established at the jury trial in this case was the repair costs incurred by the appellees to put the Beech craft in a flyable condition. They proved repair expenses in excess of $33,000.00, although they conceded that they had enhanced the plane's current value from $28,000.00 when it was taken, to $40,000.00-$50,000.00. By their lowest figures, the plane was worth $11,000.00 more than when appellants wrongfully took it. Therefore, they requested, at trial, repair costs of $29,000.00.
We do not think a damage award of $29,000.00 to repair an airplane worth $28,000.00 can be sustained in this case. Although a wrongdoer should not be allowed to escape the consequences of his act, neither should the owner be allowed to escape the consequences of his act, neither should the owner be allowed a windfall. The function of the damage award in a statutory replevin suit should be to put the owner in the same position as he would have been had the object not been taken from him. The jury should have been instructed that allowable repair costs should be limited to what was reasonably required to restore the plane to its $28,000.00 value, only.
Further, in this case the jury obviously gave no weight to the fact that the plane would have been used by the appellees and thus it would have depreciated from the $28,000.00 value through use during the time it was wrongfully withheld.[7]See Hart Land & Cattle Company, Inc.; Evans; C. McCormick, supra, at pp. 472-5. Accordingly, the damage figure should have been reduced by some amount for depreciation.
In an effort to conserve judicial effort, we remand this case for a new trial on the element of damages relating to allowable repair costs and expenses less depreciation or maintenance. The jury's determination that the plane was worth $28,110.00 when wrongfully taken is affirmed. Appellees shall also be entitled to an award for loss of use damages measured by the legal rate of interest, during the period of time the plane was withheld from appellees. Wolf; Harwell.
REVERSED IN PART AND REMANDED.
DAUKSCH, J., concurs.
COWART, J., dissents with opinion.
*288 COWART, Judge, dissenting:
This case involves the measure of monetary damages that an owner of personal property may recover from a tortfeasor when the owner has reacquired his converted property.
When personal property is converted (wrongfully taken with intent to permanently deprive) and not recovered by the owner, just as when it is totally destroyed by negligence, the owner is entitled to money damages in an amount equal to the fair market value of the property at the time of its conversion or negligent destruction. See, e.g., § 78.19(1), Fla. Stat. The owner is not entitled to additional money damages for loss of profits or loss of use or damages for depreciation to the property itself. Whether the owner is entitled to interest on the monetary amount recovered (the market value at the time of the conversion) from the date of the taking to the date of the money judgment presents an interesting legal question. While the market value of personalty on a certain date obviously refers to unliquidated damages, and the general and applicable rule of law denies prejudgment interest on sums recovered as unliquidated damages in tort cases,[1] nevertheless, there are Florida cases that, without reconciliation with the general rule, state that prejudgment interest is permitted on damages recovered for the conversion of personalty from the date of the conversion. See Moody v. Caulk, 14 Fla. 50 (1872); Robinson v. Hartridge, 13 Fla. 501 (1870); Skinner v. Pinney, 19 Fla. 42, 45 Am.Rep. 1 (1882); Page v. Matthews, 386 So.2d 815 (Fla. 5th DCA 1980); Gillette v. Stapleton, 336 So.2d 1226 (Fla. 2d DCA 1976); Pettigrew v. W. & H. Development Co., 122 So.2d 813 (Fla. 2d DCA 1960); Capital Lincoln-Mercury, Inc. v. General Motors Acceptance Corp., 105 So.2d 899 (Fla. 1st DCA 1958).
When an owner of converted personal property has an opportunity to recover it, the owner always has the initial option to elect between several legal remedies. The owner's choice of remedy controls the relevant rule of damages as between recovering solely money damages for the conversion or recovering the personalty and, perhaps, some money damages. The choice of remedies is between replevin, trover, detinue and debt. Historically trover and detinue did not relate to a wrongful taking but those distinctions are now ignored and, in fact, the two causes of action have fallen into practical disuse. The theory of the usual action for money damages is now debt based on an agreement implied by law to pay for the wrongful assertion of dominion over personalty inconsistent with the owner's rights. When the choice of the owner is to recover the converted personalty he is entitled to do so but that choice may severely limit the amount of his monetary recovery. When the owner elects to recover converted property by replevin or otherwise he should also be able to recover money damages as may be necessary to make him whole. This is the "damages sustained by reason of the wrongful taking or detention" mentioned in sections 78.01 and 78.18, Florida Statutes. The measure of those damages is normally the difference between the fair market value of the use of the detained property from the time of the taking to the date it was recovered. The usual and proper measure of the value of such use is the cost of procuring the use of comparable property. However, if specially pleaded the plaintiff's actual expense in excess of the market value of the use of the property detained may be recovered.[2] In the absence of evidence of specific value of the use, some courts have permitted it to be measured by allowing interest, presumably on the value of the property during the period of its wrongful detention.[3]
In addition to its use value, as damages for a wrongful detention, if the property has been damaged, abused, or depreciated the owner should be entitled to recompense *289 therefor measured by the difference between the market value of the property at the time of the taking and the market value at the time of its recovery.[4] Unfortunately, in this case the fair market value of the airplane on the date of its recovery by the owner was not established at trial and for that reason this case must be reversed for a trial of that issue of fact before the proper damages in this case can be determined. Because the owner's recovery for the difference in value of the property between the time of its taking and its recovery necessarily includes the reduction in value occasioned by all physical damage and abuse and actual depreciation (normal wear and tear), no additional damages, such as for the cost of repairs, should be allowed for these items although the cost of necessary repairs may be admissible as evidence of the reduction in the market value of the detained property.
In a replevin action when an owner recovers his property, the total ancillary money damages for its wrongful taking or detention (the fair market value of the use of the property during its wrongful detention or interest) plus damages for any reduction in the market value of the property itself (resulting from physical damage, abuse and actual depreciation) should in no case be allowed in excess of money damages for conversion, being the fair market value of the property at the time of the taking plus interest. There is no logical reason why the theory of damages in a replevin action, in which the property or some of it is actually recovered by the owner, and the theory of damages in a conversion action, in which no property is actually recovered, should be so divergent as to allow a plaintiff in one action and not the other to recover more than the total fair market value of the property at the time of its wrongful taking. No measure of damages under any theory of law is intended to permit the owner to "have his cake and eat it too;" that is, to recover his property and also recover money damages in excess of its market value at the time of its wrongful taking or detention. See, e.g., § 78.19, Fla. Stat. The first decision in this case as to the propriety of damages measured by the cost of procuring the use of comparable property as against damages based on interest, should be made by the trial judge on remand subject to review by this court on appeal by the aggrieved party.
This case should be reversed for retrial on the issue of damages in accordance with this opinion.
NOTES
[1] Although originally alleged in appellees' pleadings, punitive damages were neither proved nor requested at trial; nor are they an issue on appeal.
[2] The trial judge made the following fact findings and conclusions of law in his September 11, 1981 Order:

1. On November 8, 1978, LEISURE TIME PROPERTIES, INC., ROBERT W. BROWNING and D.R. DELOACH entered into an Agreement with FORESIGHT ENTERPRISES, INC., and JOHN OSTGARD.
2. The parties to the Agreement dealt at arms length and the terms of their Agreement were reasonably fair; and, if they had been carried out as contemplated, each party would have fairly received what was bargained for.
3. The Agreement between the parties contained certain purported time limitations as set forth in paragraphs numbered 3 and 4 of said Agreement; however, the Court finds that time was not of the essence to said Agreement; and, that the time limitations were of little or no consequence to the parties; and, that all parties, by their conduct and actions, effectively waived such time limitations.
4. Plaintiffs relied upon the Defendants' clear waiver of said time limitations; and, in due time, did fully comply with the essential requirements of paragraph numbered 3 of said Agreement and duly advised Defendants that they were ready, willing and able to conclude the Agreement as contemplated by the parties.
5. Defendants failed and refused to comply with the requirements of paragraph numbered 4 of said Agreement; and, in fact, may not have been able to comply because the title to the aircraft in question was held by CKN AIRWAYS, INC., a separate corporation owned by Defendant JOHN OSTGARD.
6. FORESIGHT ENTERPRISES, INC., and CKN AIRWAYS, INC., were both closely held corporations primarily owned and operated by Defendant JOHN OSTGARD, and the dealing within and between said corporations and JOHN OSTGARD carry with them an indicia of fraudulence with regard to the Agreement between the parties and title to said aircraft.
7. During the month of April, 1979, JOHN OSTGARD fraudulently and unlawfully took the Beech Baron aircraft from the custody and control of the Plaintiffs and removed it to a place outside the State of Florida, and refused to return it, against the will and wishes of the Plaintiffs.
8. In April, 1979, at the time JOHN OSTGARD took said aircraft, Plaintiffs were entitled to the possession, control and custody of said aircraft and JOHN OSTGARD was not entitled to such possession, custody and control.
9. Since April, 1979, JOHN OSTGARD failed and refused to execute and deliver good title to or possession of said aircraft to the Plaintiffs, contrary to and in violation of the terms of the Agreement between the parties.
10. Plaintiffs, LEISURE TIME PROPERTIES, INC., ROBERT W. BROWNING and D.R. DELOACH, are entitled to immediate and exclusive possession and control of the aircraft which is the subject of said Agreement.
11. Defendants have made a counter-claim concerning an International Forklift and assorted log chains and chain binders; they may offer proof of loss, if any exists, at the time the trial jury decides the issue of damages.
12. There is no evidence of fraud or breach of contract, by any Plaintiff which would support Defendant's counter-claim for punitive damages or attorney's fees; and, none will be allowed.
[3] Further section 78.18 provides:

If it appears that the property described in the complaint was wrongfully taken or detained by the defendant and the property has been delivered to plaintiff by the officer executing the writ, plaintiff shall have judgment for his damages caused by the taking and detention costs.
[4] Florida Trust & Banking Company v. Consolidated Title Co., 86 Fla. 317, 98 So. 915 (1923); Evans v. Kloeppel, 72 Fla. 267, 73 So. 180 (1916); Hart Land & Cattle Co., Inc. v. Reeves Steel, Inc., 309 So.2d 611 (Fla. 1st DCA 1975); Goodbody & Company v. Dodson, 240 So.2d 882 (Fla. 3rd DCA 1970); Leitner v. G. Boromei Fish Co., 140 Fla. 74, 191 So. 76 (1939); Butler v. Mirabelli, 179 So.2d 868 (Fla. 2d DCA 1965).
[5] Page v. Matthews, 386 So.2d 815 (Fla. 5th DCA 1980); C. McCormick, Law of Damages 470 (1935).
[6] C. McCormick, supra at p. 476 (1935); 77 C.J.S. Replevin §§ 277, 291 (1952).
[7] Browning testified that had the Beech Baron been available to appellees during the twenty-eight month period it would have been used, at a minimum, forty hours per month. He further testified that an airplane such as the Beech Baron depreciates at the rate of $8,000.00 a year. However, he said he considered a 1961 model's maintenance costs essentially replaced the depreciation factor. He further testified that he calculated a cost of $20.00 per hour for maintenance for this aircraft.
[1] See 17 Fla.Jur.2d Damages § 83.
[2] See, e.g., Ocala Foundry & Mach. Works v. Lester, 49 Fla. 199, 38 So. 51 (1905).
[3] See, e.g., Harwell v. Wilder, 247 So.2d 90 (Fla. 2d DCA 1971).
[4] However, at this point the dissent does not agree with the majority opinion that a plaintiff owner's recovery of the damages against a tortfeasor should be reduced by the normal depreciation of the wrongfully taken property which would have occurred as the result of the owner's use during the time the owner was actually deprived of the use of his property.