570 So.2d 1067 (1990)
Hector BADILLO, Appellant,
v.
Morris E. HILL, III, et Ux., Appellees.
No. 89-1167.
District Court of Appeal of Florida, Fifth District.
November 29, 1990.
Janet DeLaura Harrison, of Smalbein, Johnson, Rosier, Bussey, Rooney & Ebbets, P.A., Rockledge, for appellant.
R. Keith Williams, of High, Stack, Lazenby, Palahach, Maxwell & Williams, Melbourne, for appellees.
W. SHARP, Judge.
Badillo appeals from a final judgment after a non-jury trial that awarded the Hills (Morris and his wife, Joan) $6,856.77 in damages. The Hills sued Badillo to recover damages for harm he caused to their vintage 1966 Mustang convertible. Driving the Mustang, Morris ran into Badillo's unoccupied, unlit and seemingly abandoned car, in the middle of the highway one dark night in May of 1988. The trial judge found Badillo was 90 percent responsible for the accident, and he awarded an apportioned amount of damages based on $2,818.86 cost to repair and $4,434.21 for loss of use. This sum was the total rental expense of substitute cars incurred by Joan, since the accident through date of the trial (approximately nine months). We reverse.
The sole issue in this case is the proper standard or rule in this state for awarding loss of use damages. Is the loss of use damage component limited by a reasonable time to effect repairs? And, is the total damage award for repairs and loss of use limited at the outside by the fair market value of the chattel just prior to the accident? Counsel for the parties assert (and our research confirms), these two questions have not been clearly addressed by any Florida appellate court.
The record establishes that the Mustang had, at most, a value of $6,000 immediately prior to the accident. The Hills' written appraisal suggested it was worth $5,400 in 1986. Gentry, an insurance appraiser, testified its fair market value in 1988 was $5,166. But, he acknowledged a comparable car had a value of $6,000, and that the vintage car would have appreciated in value since its 1986 appraisal. Hill testified it was worth $6,000.
The Mustang was severely damaged. Gentry said it was a "borderline total." He estimated the repairs would cost at least $2,818.86, and that the time to order parts and make repairs would run a maximum of 21 days.
After the accident, the Mustang was towed to the Hills' garage, where it remained *1068 at the time of the trial. Its condition prohibited it from being driven. Both of the Hills work and require transportation. Morris had a company car for his use, but shortly after the accident, the Hills bought a van for Morris' use in his new business. This had been planned prior to the accident.
Joan tried to use an unreliable van the Hills also owned prior to the accident. She tried to share rides to work with a neighbor. Neither was satisfactory. She was forced to rent various cars from Avis. The total expense at time of trial was $4,434.21.
Joan and Morris also testified that after the accident they could not afford an approximately $3,000 repair bill. Nor could they finance a new car for Joan. They were able to pay for the rental cars with credit cards and borrowed funds. The trial court allowed all of the rentals Joan paid over the full nine-month period since the accident until trial. The judge based his award on the express finding that the Hills did not delay the repairs, and they were unable to make the repairs themselves.
On loss of use damages, the Florida appellate cases follow Restatement of Torts § 928 (1939). See McHale v. Farm Bureau Mutual Insurance Co., 409 So.2d 238 (Fla. 3d DCA 1982); Meakin v. Dreier, 209 So.2d 252 (Fla. 2d DCA 1968). It provides:
Where a person is entitled to a judgment for harm to chattels not amounting to a total destruction in value, the damages include compensation for
(a) the difference between the value of the chattel before the harm and the value after the harm, or at the plaintiff's election, the reasonable cost of repairs or restoration where feasible, with due allowance for any difference between the original value and the value after repairs, and
(b) the loss of use.
The plaintiff is entitled to make an election as to theory of recovery, but cannot obtain a combination of cost of repairs plus lessened value before repairs, because that would permit a double recovery. Merrill Stevens Dry Dock Co. v. Nicholas, 470 So.2d 32 (Fla. 3d DCA 1985).
In establishing loss of use damages, it is appropriate to consider the cost of renting a replacement vehicle during the period of repairs, whether or not the plaintiff has actually rented another car. See Meakin (applying Restatement of Torts § 928 (1939)); Holmes v. Raffo, 60 Wash.2d 421, 374 P.2d 536 (Wash. 1962). This makes the law uniform for business vehicles as well as pleasure or family vehicles; and for persons who can afford to rent a substitute car and those who cannot. However, the span of time for loss of use is limited to the period of time reasonably necessary to procure parts and make repairs. Meakin; McCormick, Damages 472 (1935); 17 Fla. Jur.2d Damages § 70 at 72 (1980).
This case presents the novel question for the first time in Florida as to whether the reasonable span of time to make repairs should be expanded by the "subjective" or particular financial situation of the injured party. As the writer of a note in 1925 for the Harvard Law Review observed, the English case law upon which loss of use damages is based was "vacillating" between an objective and a subjective approach. He concluded the American decisions generally adhered to the objective view. Note, Damages: Objective Determination of the Value of the Use of a Chattel, 39 Harv.L.Rev. 760 (1925-1926); Annotation, Recovery for Loss of Use of a Motor Vehicle Damaged or Destroyed, 18 A.L.R.3d 497 (1968). That view would disallow any additional damages based on the penurious circumstance of the injured party.
All American jurisdictions are not uniform on this point. Loss of use damages have been allowed for a period of time much longer than the time span during which repairs could or should have been made, because the plaintiff tried to effect the repairs, but due to his financial circumstances, he was unable to do so. See Hoover v. Montanus, 108 Misc.2d 916, 439 N.Y.S.2d 263 (N.Y.City Ct. 1981); Stahl v. Farmers Union Oil Co. of Richland, 145 Mont. 106, 399 P.2d 763 (Mont. 1965), overruled in part, McPherson v. Kerr, 195 Mont. 454, 636 P.2d 852 (Mont. 1981); Valencia v. Shell Oil Co., 23 Cal.2d 840, 147 P.2d 558 *1069 (Cal. 1944). However, in Stahl and Valencia, the evidence established that the defendant undertook the repairs and either stalled or refused to pay for them, and was partially to blame for extending the period of time during which loss of use was experienced. Compare, Cecere v. Harquail, 104 A.D.2d 6, 481 N.Y.S.2d 533 (N.Y.A.D. 4th Dept. 1984); Stallman v. Hill, 510 S.W.2d 796 (Mo. App. 1974). In this case, there was no evidence offered that the defendant contributed to the delay in any manner.
Courts in Louisiana have considered this issue, and have strongly concluded that only the span of time reasonably needed to make repairs will be allowed to measure loss of use. Prothro v. Dillahunty, 488 So.2d 1163 (La. App. 2d Cir.1986). A breakdown in settlement negotiations with the defendant or his insurer, regardless of who is at fault, is not relevant to expand the time frame. Rivere v. Bellefonte Insurance Co., 388 So.2d 75 (La. App. 1st Cir.), writ refused, 391 So.2d 455 (La. 1980). The rationale for this view is that once the courts start to consider subjective peculiar circumstances beyond the fact of injury, it would make the rule of law difficult to apply and could open the door to the possibility of considerable abuse.[1]
It appears to us that the better view is to adhere to the more "objective" rather than the "subjective" approach.[2] If the evidence sustained a finding that the defendant caused or contributed to the delay in making repairs, a greater time could be awarded. But that is not the situation presented in this case.
We thus conclude the trial court erred in allowing the nine months of loss of use damages here. This element of damages should have been limited to one month at the most, as argued by defendant's counsel below, since the only testimony was that the repairs could have been completed in 21 days if promptly undertaken.[3]
In addition, we note another problem with this damage award, which would also have required us to reverse. The total damages awarded here exceed the value of the Mustang prior to its accident. Most authorities and case law hold that a plaintiff cannot recover a sum greater than the chattel's pre-injury value. Annotation, Damages: Duty to Minimize, 55 A.L.R.2d 936 (1957); McCormick, Damages 476 (1935). The rationale is that damages for the greater injury (total destruction of the chattel) should exceed those for the lesser (injury to the chattel). Apostle v. Prince, 158 Ga. App. 56, 279 S.E.2d 304 (Ga. App. 1981); Kluger v. White, 281 So.2d 1 (Fla. 1973); 15 Blashfield, Auto Law and Practice § 480.1 (1969). See Foresight Enterprises, Inc. v. Leisure Time Properties, Inc., 466 So.2d 283, 286 (Fla. 5th DCA), rev. denied, 476 So.2d 673 (Fla. 1985). In a case like this one where no evidence establishes the defendant caused the delay in repairs, the total combined award for damages (the cost of repairs and loss of use) should not exceed the fair market value of the car prior to its injury: $6,000 in this case.
Accordingly, we reverse the judgment and remand for entry of a new damage award consistent with the rules of law discussed in this opinion.
REVERSED and REMANDED.
HARRIS, J., concurs.
DAUKSCH, J., dissents with opinion.
DAUKSCH, Judge, dissenting.
In my opinion the judgment is fair and should be upheld. Appellees were awarded actual damages they suffered as a direct result of the negligence of the appellant. There is no hint of any fraudulent behavior, overreaching or unreasonable conduct on the part of appellees so they should not be disallowed from recovering the amount they suffered.
*1070 Every negligent person should be required to pay for all injuries he causes, so if he happens to hit an economically disadvantaged person (as opposed to a rich one who can afford to fix his car and wait to be finally paid by the defendant), then his risks are increased directly proportionate to the losses he causes. This defendant could have reduced his ultimate payment had he owned up to his conduct early-on and paid for the car repairs then, rather than waiting for many months before paying. This court's decision rewards delay in settlement of just debts.
The trial judge did justice and we should honor that.
NOTES
[1] Hoffman v. All Star Insurance Corp., 288 So.2d 388 (La. 4th Cir.), writ refused, 290 So.2d 909 (La. 1974); Menard v. Prejean, 374 So.2d 1275 (La. App. 3d Cir.1979).
[2] See Brandon v. Capital Transit Co., 71 A.2d 621 (D.C.Mun.App. 1950); Howard v. Adams, 246 S.W.2d 1002 (Ky. 1952).
[3] Bender, Commercial Damages § 4.02 (1990).