[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 19, 2004
THOMAS K. KAHN
CLERK

_____

No. 03-13022

_____

D. C. Docket No. 01-02059-CV-ASG

MCI WORLDCOM NETWORK SERVICES, INC.,

Plaintiff-Appellant,

versus

MASTEC, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(May 19, 2004)**

Before TJOFLAT, BARKETT and SILER[*], Circuit Judges.

BARKETT, Circuit Judge:

Certification from the United States Court of Appeals for the Eleventh

_____

[*]Honorable Eugene E. Siler, United States Circuit Judge for the Sixth Circuit, sitting by designation.

Circuit to the Supreme Court of Florida, pursuant to Fla. Stat. § 25.031[1] and Fla. R. App. P. 9.150(a).[2]

In this diversity action, MCI Worldcom Network Services, Inc. ("MCI") appeals the district court's summary judgment denying it loss of use damages in a negligence and trespass suit against Mastec, Inc., for the severance of an underground fiber-optic cable. If loss of use damages are available, the parties also dispute what the proper measure of such damages should be. Because we find that these are unsettled questions of distinct importance to the development of Florida tort law and dispositive of the case at hand, we certify the issues to the Florida Supreme Court.

BACKGROUND

---

[1] Fla. Stat. § 25.031 states:

The Supreme Court of this state may, by rule of court, provide that, when it shall appear to . . . any circuit court of appeals of the United States . . . that there are involved in any proceeding before it questions or propositions of the laws of this state, which are determinative of the said cause, and there are no clear controlling precedents in the decisions of the Supreme Court of this state, such federal appellate court may certify such questions or propositions of the laws of this state to the Supreme Court of this state for instructions concerning such questions or propositions of state law, which certificate the Supreme Court of this state, by written opinion, may answer.

[2] Fla. R. App. P. 9.150(a) provides:

On either its own motion or that of a party . . . a United States court of appeals may certify a question of law to the Supreme Court of Florida if the answer is determinative of the cause and there is no controlling precedent of the Supreme Court of Florida.

While excavating in downtown Miami, Mastec severed one of MCI's underground fiber-optic cables. The severed cable ran between two MCI terminals or nodes located about twelve miles apart. Both of these terminals are connected to a third terminal in downtown Miami, thus creating a continous link between all three terminals and, from them, to the rest of MCI's telecommunications network. The severed cable remained damaged for 97 hours, during which time MCI was able to redirect the telecommunications signals that would have traveled through the damaged cable in the opposite direction along the continuous link. MCI thereby maintained continuous transmission of its signals and avoided any interruption of phone service or loss of profits. The parties do not dispute these facts on appeal.

In addition to compensatory damages consisting of $23,000 for repairing the damaged cable, MCI claimed loss of use damages of about $868,000, the amount that MCI claims it could have paid (but did not) to rent the use of an equivalent substitute cable from another telecommunications company for the time reasonably necessary to make repairs. MCI also claimed punitive damages.

Upon consideration of summary judgment motions by both parties, the district court determined that MCI was not entitled to any damages for loss of use.

DISCUSSION

Under Florida law, loss of use damages are available for an individual or entity whose chattel has been damaged by another party.  Meakin v. Dreier, 209 So.2d 252, 254 (Fla. 2d Dist. Ct. App. 1968).  This rule is pursuant to Florida's adoption of the Restatement (Second) of Torts, which provides that "[w]hen one is entitled to a judgment for harm to chattels not amounting to a total destruction in value, the damages include compensation for . . . loss of use."  Meakin, 209 So.2d at 254 (quoting the Restatement (Second) of Torts § 928(b)).  The parties first disagree as to whether the proper characterization of the damaged property is the single severed fiber-optic cable or the ring system of cables of which it is a part.

MCI argues that its severed cable is a "separate and distinct" part of the MCI network and entitles MCI to loss of use damages because both parties agree that MCI was completely deprived of the cable's use during the 97 hours it took to repair the damage.  MCI argues that denying loss of use damages in this case is the equivalent of penalizing the company for having the foresight to install a "spare" or "protect" cable.  The spare cable was installed precisely to ward off the possibility of an interruption in service due to the negligence or recklessness of third parties.  MCI argues that it spent in excess of $9 million engineering and installing the spare cable so that its network would be protected in such emergency situations.  This investment, MCI asserts, should not serve to immunize Mastec

4

from responsibility for the consequences of its actions.

MCI argues that loss of use damages in Florida do not require actual damages or the rental of a substitute in order for a plaintiff to receive loss of use damages. For this proposition it relies primarily on Meakin, as well as the comment on clause (a) of the Restatement (Second) of Torts § 931 (which comment states that "[t]he owner . . . is entitled to recover as damages for the loss of the value of the use . . . even though the owner in fact has suffered no harm through the deprivation, as when he was not using the subject matter at the time or had a substitute that he used without additional expense to him.") Citing A. Mortellaro & Co. v. Atl. Coast Line R. Co., 107 So. 528, 528-29 (Fla. 1926), MCI says it is enough for the plaintiff merely to demonstrate that he lost the use of his property and that a replacement chattel was available for rental.

Finally, MCI insists that Florida common law does not distinguish between pleasure property, such as the personal automobiles at issue in the Mortellaro/Meakin line of cases, and commercial property of the sort at issue here. Loss of use damages are available in either case. MCI cites U.S. Supreme Court holdings in the maritime cases of The Cayuga, 81 U.S. 270 (1871), and Brooklyn Eastern District Terminal v. United States, 287 U.S. 170 (1932), for the proposition that where a business owner keeps the equivalent of a dedicated "spare boat"

5

available for emergency purposes, it is entitled to loss of use damages. Per MCI, the severed cable in this case is just such a "spare" equivalent.

On the other hand, Mastec argues that the proper characterization of the damaged property is the ring system of which the cable is a part. By this logic, MCI may not recover loss of use damages because MCI was able to assure that the rest of the ring continued functioning during the repair period and, thus, suffered no loss of service or profits. Florida law, according to Mastec, requires that a plaintiff be completely deprived of his property for loss of use damages to apply. Mastec compares MCI in this case to the homeowner in Schryburt v. Olesen, 475 So.2d 715 (Fla. 2d Dist. Ct. App. 1985), whose house remained largely available for occupancy even though its roof had been damaged by a third party. Schryburt denied the homeowner any loss of use damages.

Without the ring, Mastec argues, the severed cable would have no functional purpose or value for MCI. It is only insofar as the cable serves to transmit telecommunications signals that it has any practical meaning for MCI. This court, says Mastec, must look to the context and character of MCI's use of the damaged property in order to determine whether loss of use has occurred. Given that there was no interruption in the functional use of the severed cable – all telecommunications signals were successfully rerouted – it would be exorbitant to

6

award MCI any loss of use damages. Mastec argues that <u>Meakin</u> relies heavily on a concurring opinion in <u>Cook v. Packard Motor Car Co.</u>, 92 A. 413 (Conn. 1914), which noted that a court consider the character of a property's intended use in determining whether loss of use damages are available. <u>Id.</u> at 415. In support, Mastec also cites the comment on clause (a) of the Restatement (Second) of Torts § 931: "The use to which the chattel or land is commonly put and the time of year in which the detention or deprivation occurs are . . . to be taken into consideration as far as these factors bear upon the value of the use to the owner or the rental value."

Moreover, Mastec argues, even assuming that the relevant unit of property is the severed cable, and even assuming that the character of its intended use qualifies for loss of use damages under Florida law, MCI must still demonstrate actual lost profits. The general principle of Florida tort law, says Mastec, is that plaintiffs should be made whole for actual but not hypothetical losses. This principle, Mastec argues, is supported as well by the Supreme Court's maritime holdings in <u>The Conqueror</u>, 166 U.S. 110 (1897) and <u>Brooklyn E.</u> and this court's holding in <u>Central State Transit & Leasing Corp. v. Jones Boat Yard, Inc.</u>, 206 F.3d 1373 (11th Cir. 2000).

The parties also dispute what constitutes the proper measure of loss of use damages under Florida law. Since the 1926 <u>Mortellaro</u> case, MCI argues, Florida

7

courts have treated rental value as the proper measure of loss of use damages. Indeed, according to MCI, Florida common law frowns upon the use of anything other than rental value – such as lost profits – when it comes to calculating loss of use, on the theory that such non-rental measures are overly speculative.  For this proposition MCI cites <u>Maryland Cas. Co. v. Florida Produce Dist., Inc.</u>, 498 So.2d 1383 (Fla. 5th Dist. Ct. App. 1986).  MCI asserts that rental value is also sanctioned by the comment on clause (a) of the Restatement (Second) of Torts §931: "The owner of the subject matter is entitled to recover as damages for the loss of the value of the use, at least the rental value of the chattel or land during the period of deprivation."

Mastec argues that the Florida automobile cases endorsing rental value as the proper measure of loss of use are based on a social policy that does not apply in this case.  The automobile cases upheld rental value even where no substitute car was actually rented in order to ensure a level playing field for plaintiffs regardless of income.  If courts were to require plaintiffs to rent a replacement car during the repair period, only relatively wealthy parties would be able to claim loss of use damages.  This egalitarian policy, says Mastec, has no application to a large corporation such as MCI.

Moreover, Mastec argues that MCI has misread <u>Meakin</u> to suggest that

rental value is equivalent to loss of use, whereas Meakin actually holds that rental value is merely "indicative" of loss of use. According to Mastec, Florida common law is unambiguous that rental value is merely one of several possible ways of measuring loss of use, and that rental value in this case would create a windfall for MCI. According to Mastec, the value of the damaged cable itself is only $4,840, and MCI paid only $23,000 to repair it. (MCI contends that the value of the cable is over $8 million.) Mastec argues that MCI cannot in these circumstances claim loss of use damages measured by a Bell South substitute cable rental cost of some $868,000.

Mastec contends, finally, that since at least 1990 Florida courts have limited loss of use damages to the pre-injury value of the damaged property. Badillo v. Hill, 570 So.2d 1067, 1069 (Fla. 5th Dist. Ct. App. 1990). MCI dismisses the Badillo pre-injury limitation as an obsolete principle of Florida law, derived from a time when it was possible for owners of only partially destroyed property to claim and receive more in loss of use damages than owners of totally destroyed property. MCI asserts that this possibility, and the distinction upon which it rests, have been nullified since the 1965 case of Wajay Bakery, Inc. v. Carolina Freight Carriers Corp., 177 So.2d 544 (Fla. 3d Dist. Ct. App. 1965). MCI further argues that the pre-injury limitation, even if valid, applies to both repair costs and loss of use

damages, and not to loss of use damages alone.

CONCLUSION

We find that this case raises unsettled questions of Florida tort law that are determinative of our decision here. This court may certify questions of state law to the state's highest court. See, e.g., SCI Liquidating Corp v. Hartford Fire Ins. Co., 181 F.3d 1210, 1219 (11th Cir. 1999). Accordingly, we respectfully certify the following two questions of law to the Supreme Court of Florida for instruction:

> IS A TELECOMMUNICATIONS SERVICES CARRIER ENTITLED TO DAMAGES FOR THE LOSS OF USE OF A FIBER-OPTIC CABLE DAMAGED BY A DEFENDANT WHEN THE CARRIER INTENDED TO HAVE THE FULL CAPACITY OF THE DAMAGED CABLE AVAILABLE FOR ITS USE SHOULD THE NEED HAVE ARISEN, BUT THE CARRIER WAS ABLE TO ACCOMMODATE WITHIN ITS OWN NETWORK THE TELECOMMUNICATIONS TRAFFIC CARRIED BY THE DAMAGED CABLE AND THE CARRIER PRESENTED NO EVIDENCE THAT IT SUFFERED LOSS OF REVENUE OR OTHER DAMAGES DURING THE TIME THE CABLE WAS UNAVAILABLE?[3]

> IF THE TELECOMMUNICATIONS CARRIER IS ENTITLED TO LOSS OF USE DAMAGES, DOES THE PRE-INJURY VALUE OF THE DAMAGED CABLE ESTABLISH A LIMIT TO THOSE DAMAGES, OR SHOULD THE FAIR MARKET RENTAL VALUE OF AN EQUIVALENT REPLACEMENT CABLE FOR THE TIME REASONABLY NECESSARY TO MAKE REPAIRS SERVE AS THE MEASURE OF LOSS OF USE DAMAGES?

---

[3] We note that the phrasing of this question replicates the terms of the Fourth Circuit's certification to the Virginia Supreme Court in a case involving very similar, if not quite identical, facts. See MCI v. OSP Consultants, No. 02-1262 (4th Cir. Feb. 10, 2003).

10

The phrasing of these two questions is not intended to limit the Florida Supreme Court's consideration of the issues involved or the manner in which it gives its answers. "This latitude extends to the Supreme Court's restatement of the issue or issues." Washburn v. Rabun, 755 F.2d 1404, 1406 (11th Cir. 1985). The record in this case and the briefs of the parties shall be transmitted to the Florida Supreme Court for assistance in answering these questions.

QUESTIONS CERTIFIED.