DAVIS, Judge.
Norrell Temporary Services and Crawford & Company (E/C) appeal from an order of the Judge of Compensation Claims (JCC) ordering the E/C to provide claimant, Leona Joan Baxter, with ongoing medical care by Dr. Hooshmand and ordering that the E/C pay Dr. Hooshmand for care provided to claimant from June 1992 until the date of the final hearing. The E/C argue on appeal that the JCC erred in ordering authorization of Dr. Hooshmand for the following reasons: (1) claimant failed to object to the neurologists and neurosurgeon offered by the E/C until the final hearing; (2) the E/C had no notice that claimant was requesting authorization of Dr. Hooshmand until the final hearing; (3) claimant previously stipulated that Dr. Hooshmand was not authorized and failed to file a motion seeking withdrawal or modification of the stipulation. Because the E/C did not have notice that claimant was seeking authorization of Dr. Hooshmand until the final hearing, we reverse. We also reverse on the basis that the JCC’s order directs the E/C to pay Dr. Hooshmand, an unauthorized physician, for care provided to claimant from June 1992 until the date of the final hearing.
On September 11, 1985, claimant sustained an injury to her ankle during the course and *1070 scope of her employment with Norrell Temporary Services. Claimant reached MMI on March 5,1986. On November 5, 1990, claimant and the E/C entered into a stipulation and joint petition for lump sum settlement. Claimant stipulated that she was seeing Dr. Hooshmand for peripheral neuropathy as a result of a long-standing Coca-Cola addiction, and that Dr. Hooshmand’s treatment and diagnostic testing had been controverted by the E/C as unauthorized and not causally related to the industrial accident.
On February 6, 1992, claimant’s attorney filed a claim seeking authorization for claimant to be evaluated and treated, if necessary, by a neurologist. Claimant’s claim specifically requested authorization of Dr. Tobias, Dr. Miranda or Dr. Kahn. Before the filing of claimant’s claim, claimant had been treating with Dr. Stewart, a neurologist authorized by the E/C located in Miami.
In response to claimant’s claim, the E/C sent a letter to claimant’s attorney on June 12,1992, extending authorization for claimant to be treated by Dr. Barrett or Dr. Mendoza. Claimant’s attorney failed to respond to the E/C’s letter. On July 14, 1992, the E/C sent a second letter to claimant’s attorney asking whether Dr. Barrett or Dr. Mendoza were acceptable to claimant. On August 3, 1992, the E/C sent a third letter to claimant’s attorney, noting that they were in receipt of claimant’s attorney’s letter dated July 22, 1992. The E/C again inquired as to whether Dr. Barrett or Dr. Mendoza were acceptable to claimant. Claimant’s attorney did not respond to the E/C’s letter. On October 19, 1992, the E/C sent a fourth letter by certified mail to claimant requesting that claimant contact the E/C’s attorney prior to the hearing on claimant’s claim scheduled in the next few weeks. The letter noted that attempts to reach claimant by telephone had been unsuccessful. The letter was addressed to claimant because claimant was no longer represented by counsel. Although the letter indicated that it was imperative that the E/C speak to claimant within the next few days, claimant did not respond to the letter.
A hearing on claimant’s claim was scheduled on November 3, 1992. Claimant did not attend the hearing. On November 4, 1992, the E/C sent claimant a fifth letter by certified mail advising claimant that the JCC had rescheduled the hearing on her claim. The E/C again advised claimant that the E/C was extending authorization for treatment with Dr. Barrett or Dr. Mendoza. Because Dr. Barrett may have been retiring, the E/C offered to authorize Dr. Cerbone, Dr. Daugherty, Dr. Husainey or Dr. Mendoza. Claimant failed to respond to the letter.
On July 30, 1993, the E/C sent a sixth letter to claimant forwarding their portion of the pre-trial stipulation for the hearing scheduled on August 16, 1993. The E/C reminded claimant of the physicians previously offered and requested that claimant contact the E/C with regard to the acceptability of one of the doctors. Claimant failed to respond to the letter.
On August 16, 1993, a hearing was held on claimant’s claim for authorization of Dr. To-bias, Dr. Miranda or Dr. Kahn. Paragraphs eight and twelve of an amended pre-trial stipulation stated that claimant was specifically requesting authorization of Dr. Tobias, Dr Miranda or Dr. Kahn. Attorney Thoburn appeared on behalf of the claimant, but had not filed a notice of appearance. Although the amended pre-trial stipulation had already been signed by counsel for the E/C, Mr. Thoburn scratched out claimant’s request in paragraph eight for authorization of Dr. To-bias, Dr. Miranda or Dr. Kahn and substituted Dr. Hooshmand. Mr. Thoburn, however, did not alter claimant’s specific request in paragraph twelve for authorization of Dr. Tobias, Dr. Miranda or Dr. Kahn. Mr. Tho-burn acknowledged that Dr. Hooshmand was not authorized, but informed the JCC that claimant was now requesting that Dr. Hoosh-mand be authorized. Mr. Thoburn informed the JCC that he would be presenting the live testimony of Dr. Hooshmand, as well as evidence that Dr. Hooshmand was more appropriate than the three doctors requested in claimant’s claim.
The E/C objected to the alteration of the pre-trial stipulation because claimant had never filed a claim requesting authorization for treatment by Dr. Hooshmand. The E/C claimed surprise because claimant had stipulated that Dr. Hooshmand was not autho *1071 rized and had specifically requested treatment with three other doctors. The E/C moved for a continuance on the grounds that the E/C had received no notice that claimant was seeking authorization of Dr. Hooshmand or that claimant would be presenting any witnesses or evidence at the hearing. Counsel for the E/C also argued that the E/C needed an opportunity to depose Dr. Hoosh-mand. The JCC denied the E/C’s motion for a continuance and allowed Dr. Hooshmand to testify live at the hearing. The JCC noted that the case had been set since December 4, 1992, and that claimant should not have to wait until a hearing could be rescheduled to see a doctor.
Dr. Hooshmand testified that he first saw claimant on March 20, 1990. At that time, claimant had sensory nerve damage. Dr. Hooshmand also concluded that claimant had a peripheral neuropathy as a result of claimant’s heavy use of Coca-Cola. Dr. Hoosh-mand testified that, in June 1992, he diagnosed claimant as having Reflex Sympathetic Dystrophy (RSD). Dr. Hooshmand testified that, within a reasonable degree of medical probability, claimant’s RSD was causally related to the industrial accident. Dr. Hoosh-mand explained that claimant began having RSD right after her injury, but that the RSD was masked by claimant’s peripheral neuro-pathy from Coca-Cola use. Dr. Hooshmand stated that his current treatment of claimant was solely for RSD. Dr. Hooshmand testified that RSD was not well understood in the medical community and that few neurologists in the area treated RSD patients.
Claimant testified that Dr. Hooshmand was the first physician to diagnose her condition as RSD, that she had benefitted from Dr. Hooshmand’s treatment, and that she wanted to continue treatment with Dr. Hooshmand. Claimant acknowledged receiving a letter from the E/C authorizing five neurologists. Claimant testified that the doctors offered by the E/C either did not treat RSD or were unavailable. Claimant testified that she had always asked the carrier to authorize Dr. Hooshmand, but that the carrier would not authorize Dr. Hooshmand.
The JCC found that Dr. Hooshmand was the best practitioner presented by the parties to provide ongoing treatment to claimant. The JCC ordered that the E/C provide claimant with ongoing medical care by Dr. Hoosh-mand, and that the E/C pay Dr. Hooshmand for care provided to claimant from June 1992 until the date of the final hearing.
We hold that the JCC erred in ordering that the E/C provide claimant with ongoing medical care by Dr. Hooshmand. All involved parties must have notice of the issues to be disputed and determined by the JCC at the hearing. Village Inn Restaurant v. Aridi, 543 So.2d 778 (Fla. 1st DCA 1989). In the present case, the E/C did not have notice that claimant was seeking authorization to be treated by Dr. Hooshmand until the final hearing. Claimant stipulated in her washout settlement that Dr. Hooshmand was unauthorized. Prior to June 1992, when Dr. Hooshmand diagnosed RSD, Dr. Hooshmand had been treating claimant for peripheral neuropathy. Both parties agreed that claimant’s peripheral neuropathy was unrelated to the industrial accident. The E/C learned for the first time at the final hearing that claimant was claiming that she had RSD, and that claimant was claiming that the RSD was causally related to the industrial accident. The E/C was therefore deprived an opportunity to investigate claimant’s claim or to put on any evidence at the hearing to counter claimant’s claim.
We hold that the JCC erred in ordering that the E/C pay Dr. Hooshmand for the care and treatment provided to claimant from June 1992 through the date of the final hearing. Except in an emergency, a claimant who has been offered alternative medical care is not entitled to unilaterally obtain.treatment from an unauthorized physician of his choice and then obtain reimbursement from the E/C. Usher v. Cothron, 445 So.2d 387, 388 (Fla. 1st DCA 1984); Ocean Manor Resort Hotel v. Garbalosa, 512 So.2d 256 (Fla. 1st DCA 1987). A JCC’s finding that unauthorized treatment was reasonable and necessary does not excuse a claimant’s failure to obtain authorization for the treatment. Palm Beach Newspapers, Inc. v. Roston, 404 So.2d 174, 175 (Fla. 1st DCA 1981); Dump All, Inc. v. Grossman, 475 So.2d 976, 979 (Fla. 1st DCA 1985).
*1072 In the present case, claimant stipulated in her washout settlement that Dr. Hooshmand was unauthorized. Claimant did not see Dr. Hooshmand on an emergency basis. After the E/C received claimant’s February 6,1992 claim seeking evaluation or treatment, if necessary, with three specific neurologists, the E/C repeatedly offered to authorize alternative neurologists. Nevertheless, claimant continued to treat with Dr. Hooshmand, an unauthorized physician. Because claimant failed to meet her obligation of securing a ruling from the JCC before obtaining treatment from Dr. Hooshmand, we reverse the JCC’s order requiring that the E/C pay Dr. Hooshmand for treatment rendered to claimant from June 1992 through the date of the final hearing.
The E/C argue that claimant was required to set aside the washout settlement stipulation before the JCC could authorize treatment with Dr. Hooshmand. Although both parties agree that claimant’s peripheral neuropathy was unrelated to the industrial accident, claimant did not stipulate that she would never seek authorization for treatment by Dr. Hooshmand for conditions causally related to the industrial accident. Thus, it would not be necessary for claimant to set aside the stipulation before the JCC could authorize treatment by Dr. Hooshmand for RSD or for other conditions causally related to the industrial accident.
Accordingly, we reverse and remand for further proceedings to allow the E/C to present evidence with regard to the authorization of Dr. Hooshmand. We reverse that part of the JCC’s order which requires the E/C to pay Dr. Hooshmand for medical treatment provided to claimant from June 1992 through the date of the final hearing.
ALLEN and WEBSTER, JJ., concur.