### In re Hugh Don CAMP, Debtor.

### Max C. Pope, Trustee, Plaintiff,

### v.

### Tony Gordon, Tim Gordon, and Julian Gordon, Defendants.

**Bankruptcy No. 01–06844–TBB–7.**
**Adversary No. 03–00254.**

United States Bankruptcy Court,
N.D. Alabama,
Southern Division.

June 7, 2004.

---

11. *Id.*, 124 S.Ct. at 1961–62.

12. *Id.*

13. *Id.*

James G. Henderson, Pritchard, McCall & Jones, LLC, Birmingham, AL, for Debtor.

William Dennis Schilling, Jerry W. Schoel, Birmingham, AL, for Trustee.

R. Scott Williams, Haskell, Slaughter, Young & Johnston, Birmingham, AL, for defendants.

### Memorandum Opinion and Certification

THOMAS B. BENNETT, Bankruptcy Judge.

### I. Topography: Foreign, Domestic, and Perfection.

The trustee of the bankruptcy estate of Hugh Don Camp contests judgment liens claimed by Mr. Tony Gordon, Mr. Tim Gordon, and Mr. Julian Gordon (hereinafter collectively "the Gordons") against real properties located in various Alabama counties. Motions for summary judgment have been filed on behalf of the trustee and each of the Gordons. Although entitlement to an award of summary judgment is the final determination required of this Court, resolution of other disputed matters is the penultima to such a ruling. One category of such contested legal issues is the existence and perfection, or not, of liens against real properties which is, in part, premised on a second grouping involving whether certain foreign, federal judgments have been domesticated in Alabama.

These lien and domestication disputes have been presented to this Court by way of the referral provision of 28 U.S.C. § 157 (2004) and the jurisdictional grant of 28 U.S.C. § 1334 (2004) along with the declaratory judgment sections of 28 U.S.C. §§ 2201—2202 (2004). The essence of the controversy is whether the Gordons followed (i) one of the paths for the domestication of a non-Alabama, United States court's judgments against Mr. Camp and (ii) any of multiple ways to create and perfect liens against Alabama real properties arising from a domesticated, foreign judgment. As is set forth more fully in this opinion and certification, this Court holds that the requisites for Alabama's

domestication of the foreign, federal court's judgments have been met and that all but one of the ways for creating and perfecting liens founded on an Alabama domesticated foreign, federal court's judgment have not been met. With respect to one of the lien creation/perfection methods available under Alabama's Uniform Enforcement of Foreign Judgments Act, Ala. Code §§ 6–9–230 to –238 (1993 & Supp. 2003) (hereinafter "the AUEFJA"), that which is set forth in what is a non-uniform portion of the AUEFJA, Ala.Code § 6–9–237,[1] it has multiple readings for what is required to be recorded to create and perfect a lien against Alabama properties based on a domesticated judgment. Because which construction is correct has not been memorialized in a reported decision of an Alabama court, this Court certifies the interpretation of what Ala.Code § 6–9–237 (1993) necessitates to the Supreme Court of Alabama.

## II. Facts.

### A. Foreign Judgments and What Was Sought.

In early 2001, each of the Gordons obtained verdicts against Hugh Don Camp in the United States District Court for the Southern District of Mississippi. A judgment was entered in favor of (i) Tony Gordon in the amount of $225,000.00 plus interest at ten-percent (10%) per annum, (ii) Tim Gordon for $225,000.00 plus interest at ten-percent (10%) per annum, and (iii) Julian Gordon in the amount of $150,000.00 plus interest at ten-percent (10%) per annum. Later in 2001, another judgment was entered in favor of (i) Tony Gordon for attorney's fees and costs of $3,763.53, (ii) Tim Gordon for attorney's

fees and costs of $3,763.53, and (iii) Julian Gordon for attorney's fees and costs of $3,763.53. The two judgments entered for the Gordons against Hugh Don Camp aggregate $611,290.59 plus post-judgment interest (hereinafter collectively the "Mississippi Federal Judgments").

As part of their efforts to satisfy the Mississippi Federal Judgments, the Gordons took steps to create and perfect liens against real properties owned by Hugh Don Camp in five Alabama counties: Etowah, St. Clair, Blount, Tuscaloosa, and Baldwin. Resolution of the existence and perfection of such liens in Tuscaloosa and Baldwin counties has been mooted by the fact that at the relevant time period Mr. Camp owned no real properties in either county. This leaves only those issues determinative of whether the Gordons perfected liens against Mr. Camp's properties in Etowah, St. Clair, and Blount counties.

### B. Domestic Undertakings.

### (i) Etowah County.

Attempting to enforce the Mississippi Federal Judgments, the Gordons sent the Mississippi Federal Judgments for filing to the Clerk of the Circuit Court of Etowah County. The Mississippi Federal Judgments were received, filed, and docketed as non-jury civil actions categorized as involving a "foreign judgment" by the Clerk of the Circuit Court of Etowah County on April 10, 2001, bearing case numbers CV–2001–457–WHR and CV–2001–456–DWS (hereinafter the "Etowah Domestication Suits"). The cover letter from the Gordons' attorney contains this language:

> Enclosed for filing in the Circuit Court of Etowah County are originals

---

1. *See* Unif. Enforcement of Foreign Judgments Act §§ 1 *et seq.* (revised 1964), 13 pt. I. U.L.A. 155–245 (2002). Alabama's non-uniform provision allows one to create and per-

fect a lien against properties of a debtor predicated on a judgment without recording of a certificate of judgment.

and two copies of two foreign judgments against Mr. Hugh Don Camp . . . Please return to me one copy of the Judgment, stamped "filed" in the envelope provided. Two checks in the amount of $149.00 are included for costs of filing each of these judgments.

A portion of the Gordons' domestication efforts was to employ parts of Alabama's version of the Uniform Enforcement of Foreign Judgments Act §§ 1 *et seq.* (revised 1964), 13 pt. I. U.L.A. 155–245 (2002) (hereinafter the Uniform Laws Annotated version is referred to as the "UEFJA"). These AUEFJA predicated actions were of two types, yet both involved the filing of documents with Alabama's courts: one with its circuit courts and the other with its probate courts. On the same day suits were docketed in Etowah County to domesticate the Mississippi Federal Judgments, the Gordons filed mere copies— that is copies which were neither authenticated, nor certified—of the Mississippi Federal Judgments in the Office of the Judge of Probate of Etowah County. These filings were done in an attempt to comply with Ala.Code § 6–9–237, which provides that a particular form of copy of the foreign judgment may be filed in an Alabama probate office instead of a certificate of judgment to create and perfect a lien against properties of a judgment debtor located in the county where the filing occurs. Ala.Code § 6–9–237 (1993).

The other part of their endeavors to enforce the Mississippi Federal Judgments by use of the AUEFJA was the April 10, 2001 filings with the Circuit Court of Etowah County of (i) an affidavit, sworn to by the Gordons' counsel setting forth (a) his representation of the Gordons, (b) the address of the Gordons, (c) the last known address of Hugh Don Camp, and (d) a statement that the attached Mississippi Federal Judgments are valid, enforceable,

and unsatisfied; (ii) a copy of the Mississippi Federal Judgments; and (iii) exemplification certificates, attested to by a judicial officer, and issued by the Clerk of the United States District Court for the Southern District of Mississippi, setting forth, among other things, that the attached copies of the Mississippi Federal Judgments are true copies. These documents were filed to meet what Ala.Code §§ 6–9–232, –233 (1993 & Supp.2003) specify as necessary for domestication and the subsequent enforcement of such judgments. Notice of the filing of the Mississippi Federal Judgments was given as required under section 233 of the AUEFJA, Ala.Code § 6–9–233 (1993).

What happened later was entry of judgment orders by the Etowah County Circuit Court against Hugh Don Camp on May 23, 2001 in the amount of $11,290.59 plus accrued interest and costs—the aggregate of the legal fees awarded by the Mississippi federal court—and on June 14, 2001 for $600,000.00 plus interest and costs which is the aggregate of the compensatory damages. The evidence is that these judgment orders were prepared by and sent to the circuit court judge by the Gordons' counsel.

Although what was filed was to comport with Ala.Code §§ 6–9–232, –233 (1993 & Supp.2003)'s criterion for domestication and enforcement of a foreign judgment, it also, in the Gordons' view, served a second, although faulty purpose: a basis on which to obtain second judgment orders in each of the Etowah Domestication Suits premised on their view of the workings of the AUEFJA as requiring issuance of an Alabama court's order similar to what would issue if one followed the common law procedure for domestication of a foreign judgment. Other than the AUEFJA based filings commencing the Etowah Domestication Suits and similar proceedings in the

four (4) other mentioned Alabama counties, no non-AUEFJA founded lawsuits were initiated by the Gordons. With respect to the Etowah Domestication Suits, the Gordons did not record in the Office of the Judge of Probate (hereinafter any reference to the Office of the Judge of Probate of a county is referred to as the "Probate Office") of Etowah County either (i) the May 23, 2001 and June 14, 2001 judgment orders entered by the Circuit Court of Etowah County or (ii) certificates of judgment issued by the Clerk of the Circuit Court of Etowah County (a) for the May 23 and June 14, 2001 judgment orders of the Circuit Court of Etowah County or (b) authorized under section 232 of the AUEFJA, Ala.Code § 6–9–232 (Supp. 2003), for the Mississippi Federal Judgments domesticated under the AUEFJA.

### (ii) St. Clair County.

As they had done in Etowah County, the Gordons sent substantially the same transmittal letter, two non-jury civil action filing fees, and certain other requisite documents to the Clerk of the Circuit Court of St. Clair County. The result was the filing and docketing of two non-jury civil actions as "foreign judgment" matters premised on the Mississippi Federal Judgments by the Clerk of the Circuit Court of St. Clair County on April 10, 2001, bearing case numbers CV–2001–84A and CV–2001–85A (hereinafter the "St. Clair Domestication Suits"). The docketing for the St. Clair Domestication Suits details the certain other requisite documents filed as: (i) an attorney's affidavit identical to the affidavit filed in Etowah County; (ii) copies of the Mississippi Federal Judgments against Hugh Don Camp and in favor of the Gordons; and (iii) exemplification certificates for the Mississippi Federal Judgments identical to the exemplification certificates filed in Etowah County. Moreover, the Clerk of the Circuit Court of St. Clair County mailed the necessary notice of filing of the Mississippi Federal Judgments to Mr. Camp. The Gordons, also on April 10, 2001, filed unauthenticated and uncertified copies of the Mississippi Federal Judgments in the Probate Office of St. Clair County.

As occurred in the Circuit Court of Etowah County and on May 25, 2001, judgment orders drafted by the lawyers for the Gordons were entered in the St. Clair Domestication Suits in favor of the Gordons by the Circuit Court of St. Clair County for the aggregate of the compensatory damages of $600,000.00 plus accrued interest and costs and another totaling the attorney fee awards of $11,290.59 plus accrued interest and costs. The usual essentials of a complaint, summons, service, return of service, and so on, necessary to comply with domestication of a foreign judgment via a traditional lawsuit in an Alabama court were not observed. The Gordons did not file either (i) a copy of the judgment orders entered by the Circuit Court of St. Clair County or (ii) certificates of judgment issued by the Clerk of the Circuit Court of St. Clair County in the Probate Office of St. Clair County (a) pursuant to section 232 of the AUEFJA, Ala.Code § 6–9–232 (Supp. 2003) or (b) based on the Alabama court's judgment orders entered in the St. Clair Domestication Suits.

### (iii) Blount County.

Consistent with what was done in the other Alabama counties, the Gordons sent for filing in the Circuit Court of Blount County documents virtually identical to those sent to the Etowah and St. Clair Circuit Court Clerks' offices. These were, as in the other clerks' offices, filed and docketed as non-jury civil matters involving a "foreign judgment." These civil actions, founded on the Mississippi Federal

Judgments, were filed on April 10, 2001 and assigned case numbers CV01–101 and CV01–102 (hereinafter the "Blount Domestication Suits"). In the Blount Domestication Suits, as was done in Etowah and St. Clair counties, the Gordons filed on April 10, 2001(i) an attorney's affidavit in content identical to the affidavits filed in Etowah and St. Clair counties; (ii) copies of the Mississippi Federal Judgments; and (iii) exemplification certificates for the Mississippi Federal Judgments identical to those filed in Etowah and St. Clair counties. Joined with these actions was mailing of notice of the filing of the Mississippi Federal Judgments to Mr. Camp. Furthermore, on April 11, 2001, the Gordons filed unauthenticated and uncertified copies of the Mississippi Federal Judgments in the Probate Office of Blount County.

Later, judgment orders prepared by the Gordons' attorneys were entered in the Blount Domestication Suits in favor of the Gordons for $600,000.00 plus accrued interest and costs and for $11,290.59 plus interest and costs on May 29, 2001 and June 20, 2001 respectively. Just as in the other counties, the Gordons did not file in the Probate Office of Blount County either (i) a copy of the judgment orders entered by the Circuit Court of Blount County or (ii) a certificate of judgment issued by the Clerk of the Circuit Court of Blount County. As with the judgment orders entered in the Etowah Domestication Suits and the St. Clair Domestication Suits, those entered in the Blount Domestication Suits arise (i) from civil actions commenced as a non-traditional lawsuit requiring only a filing which is the registration of judgment procedure under the AUEFJA[2] and (ii) for which none of the formalities of the common law domestication process occurred: filing a complaint, its service along with a summons followed by motions and, potentially, a trial.

## III. Enforcing a Non–Alabama United States Court Judgment in Alabama.

### A. Federal Domestication—So Simple, Yet Not Availed.

 Of the methods for enforcing a foreign, federal judgment in Alabama, one entails the interplay between a statute of the United States, 28 U.S.C. § 1963 (2004), and that of Alabama, Ala.Code § 6–9–210 (1993). Title 28 of the United States Code, section 1963 states in pertinent part:

A judgment in an action for the recovery of money or property entered in any...district court...may be registered by filing a certified copy of the judgment in any other district...when the judgment has become final by appeal or expiration of the time for appeal or when ordered by the court that entered the judgment for good cause shown.... A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in a like manner.

28 U.S.C. § 1963 (2004). Under this statute, a judgment entered in a United States district court may be registered in any other United States district court by filing a certified copy of the judgment with the court where it is sought to be domesticated. *Id.* A judgment so filed has the same effect as if the judgment had been rendered by the district court where filed. *See Leasco Response, Inc. v. Wright,* 99 F.3d 381 (11th Cir.1996); *Juneau Spruce Corp. v. Int'l Longshoremen's & Warehousemen's Union,* 128 F.Supp. 697 (D.Hawai'i 1955).

---

**2.** Ala.Code § 6–9–232 in pertinent part has this language: "A clerk of any circuit court shall note the filing in a special docket set up for foreign judgments."

After the foreign, federal judgment has been effectively domesticated in an Alabama located federal court by registration, the judgment holder may utilize Alabama Code § 6–9–210 (1993). This allows the holder of any judgment entered in any court of the United States located in Alabama to record a certificate of judgment issued by the clerk of the Alabama located federal court in the Probate Office of any county in Alabama. Ala.Code § 6–9–210 (1993) (stating that "[t]he owner of any judgment entered in any court ... of the United States held in [Alabama] may file in the office of the judge of probate ... a certificate of the clerk or register of the court by which the judgment was entered....").

More basically and had the Mississippi Federal Judgments been registered in a United States District Court located in Alabama as specified by the language of 28 U.S.C. § 1963, they would have been domesticated as judgments entered by an Alabama federal court, and Alabama Code § 6–9–210 would permit certificates of judgment issued by the clerk of any Alabama located United States District Court to be filed in the Probate Office of any county in Alabama. Alabama's statutes also provide that any certificate so filed "shall be a lien in the county where filed on all property of the defendant which is subject to levy and sale under execution...." Ala.Code § 6–9–211 (1993). The property subject to levy and sale under execution includes real estate. *See Greenwood v. Trigg, Dobbs & Co.*, 154 Ala. 487, 46 So. 227 (1908). Despite the existence of this available and simple means for domestication of the Mississippi Federal Judgments and creation and perfection of liens in Alabama predicated on the Mississippi Federal Judgments, the Gordons did not utilize it to enforce their claims against Hugh Don Camp's properties.

Although not availed of by the Gordons, the discussion of this federal court registration methodology for domestication and subsequent issuance of a certificate of judgment has another purpose. It delineates not just the easy way by which a non-Alabama, federal court judgment may be domesticated and a lien created and perfected against Alabama located properties of a person or entity, it highlights the procedures copied and implemented by uniform portions of what Alabama enacted as the AUEFJA. *See* Unif. Enforcement of Foreign Judgments Act § 1 *et seq.* (revised 1964), 13 pt. I. U.L.A. 155, 157, prefatory note (2002) ("This 1964 revision of the Uniform Enforcement of Foreign Judgment Act adopts the practice which, in substance, is used in Federal courts.").[3]

---

**3.** The full text of the Prefatory Note for the revised Uniform Foreign Judgments Act is as follows:

Court congestion is a problem common to all states. Overcrowded dockets, overworked judges and court officials, with attendant delays, inevitably tend to lower standards for the administration of justice. One of the things that contributes to calendar congestion is the Federal necessity of giving full faith and credit to the judgments of courts of other states. U.S. Const. art. IV, § 1. While there is no constitutional requirement that a debtor who has had a full due process trial in one state need be given a second full scale trial on the judgment in another state, this is the only course generally available to creditors. The usual practice requires that an action be commenced on the foreign judgment. The full procedural requirements apply to the second action.

In 1948 the National Conference of Commissioners on Uniform State Laws approved the original Uniform Enforcement of Foreign Judgments Act. This act was a distinct advance over the usual method. It provided a summary judgment procedure for actions on foreign judgments. Even this advance, however, fell far short of the method provided by Congress in 1948 for the inter-district enforcement of the judg-

## B. Common Law—Not Really And, If So, Incomplete.

A second way to obtain and perfect a lien in Alabama based on a foreign judgment is what is referenced as the common law method: filing suit in a Alabama state court and obtaining an Alabama court judgment which is founded on the foreign judgment. Alabama courts recognize a judgment of another jurisdiction only as "evidence of a debt or duty, and as fixing an obligation between the parties." *Continental Auto Ins. Underwriters v. Menuskin,* 222 Ala. 370, 132 So. 883, 885 (1931). Before enactment of the AUEF-JA, the Alabama Supreme Court explained that a

> proper way to execute on property in a state other than that rendering the judgment is to take the judgment to the state where the property lies, sue on it as on a debt, obtain a judgment, and execute on the domestic judgment. "Foreign judgments are not liens and are not entitled to execution in the state to which they are brought."

*Ex parte Chandler,* 494 So.2d at 64 (internal citations omitted).[4] At the expiration of a time period relating to stays and appeals following the common law method for domestication of the foreign judgment, *see, e.g.,* Ala. R. Civ. P. 62(a); Ala. R.App. P. 4, 8; *see also* Ala.Code § 6–9–22 (1993),

the party holding the domesticated judgment may obtain a certificate of judgment from the clerk of the Alabama court issuing the judgment and record it in the Probate Office of any county in Alabama. Ala.Code § 6–9–210. It is the certificate of judgment so filed which creates "a lien in the county where filed on all property of the defendant which is subject to levy and sale under execution...." Ala.Code § 6–9–211 (1993); *see Peterson v. Drennen Motor Car Co.,* 256 Ala. 99, 53 So.2d 375 (1951). Conversely and *when not involving an AUEFJA registered judgment,* the recording of a copy of the Alabama court's judgment, whether certified or authenticated, does not under Alabama's statutes create or perfect a lien on properties of a judgment debtor in the county where recorded in the Probate Office. *See Saenger Theatres Corp. v. McDermott,* 239 Ala. 629, 196 So. 265 (1940).

As the facts and earlier discussion set forth in this opinion indicate, any argument that the Gordons properly followed the common law method for domesticating and perfecting liens premised on the Mississippi Federal Judgments fails for several reasons. The most obvious is that the prerequisites of a complaint, its service and further action by way of motion or trial to obtain a final judgment, never hap-

---

ments of the Federal District Courts. 28 U.S.C. § 1963. Further, widespread adoption by the states of some form of the Federal Rules of Civil Procedure which include regular summary judgment practice made special summary judgment acts superfluous.

*This 1964 revision of the Uniform Enforcement of Foreign Judgments Act adopts the practice which, in substance, is used in Federal courts.* It provides the enacting state with a speedy and economical method of doing that which it is required to do by the Constitution of the United States. It also relieves creditors and debtors of the additional cost and harassment of further litiga-

tion which would otherwise be incident to the enforcement of the foreign judgment. This act offers the states a chance to achieve uniformity in a field where uniformity is highly desirable. Its enactment by the states should forestall Federal legislation in this field.

Unif. Enforcement of Foreign Judgments Act § 1 *et seq.* (revised 1964), 13 pt. I. U.L.A. 155, 156–57, prefatory note (2002) (emphasis added).

4. The common law method remains viable after enactment of the AUEFJA. Ala.Code § 6–9–236 (1993).

pened. Secondly, and overlooking this inherent flaw in any argument that the Etowah, St. Clair, and Blount Domestication Suit judgments comport with the common law suit domestication requirements, is the fact that the Gordons did not file certificates of judgment in the Probate Office of any of these counties. Assuming *arguendo* that these supplemental Alabama circuit court judgment orders entered in the domestication suits are valid,[5] the failure to record a certificate of judgment issued by either the Clerk of the Circuit Court of Etowah County, the Clerk of the Circuit Court of St. Clair County, or the Clerk of the Circuit Court of Blount County in the Probate Office of any of Etowah, St. Clair, or Blount counties constitutes non-compliance with Ala.Code § 6–9–210. The result is that the Gordons did not meet the prerequisite of Ala.Code § 6–9–211 of having recorded a certificate of judgment to perfect a lien against real properties. Thus, they did not perfect a lien founded on the judgment orders issued by any of the circuit courts in any of the domestication suits on any properties of Hugh Don Camp even if they had properly instituted suit using the common law method for domesticating foreign judgments referenced in

*Continental Auto Ins. Underwriters* and *Ex parte Chandler.*[6]

■ Conjoined with the fact that no lien creation/perfection occurred by use of this method for domestication of a foreign judgment, had it been properly utilized, is the legal status to be accorded what are supplemental orders of judgment from the Circuit Courts of Etowah, St. Clair, and Blount counties. Setting aside the previously assumed, for argument purposes, validity of these judgment orders reveals an inherent fault in the Gordons' legal position. The issuance of the Alabama judgment orders is not a domestication procedure codified or contemplated under (a) the UEFJA, *see e.g., Walnut Equipment Leasing Co. v. Wen Lung Wu, et al.*, 920 S.W.2d 285, 286 (Tex.1996) (stating "when a judgment creditor proceeds under the UE[F]JA, the filing of the foreign judgment comprises both a *plaintiff's original petition and a final judgment.*") (emphasis added); *Mike Smith Pontiac, GMC, Inc. v. Mercedes–Benz of North America, Inc.*, 356 Md. 542, 741 A.2d 462, 469 (1999) ("...the filing of a foreign judgment under the [Maryland] UEFJA indeed does result in a Maryland judgment, just as if the

---

5. At least one supreme court, that of Texas, in a fact pattern similar to that in this case—where the Texas version of the UEFJA was the filing and docketing procedure domesticating a foreign judgment—has held as nullities the trial and judgment entry following trial in a civil action commenced under its version of the UEFJA. *Walnut Equipment Leasing Co. v. Wen Lung Wu, et al.*, 920 S.W.2d 285, 286 (Tex.1996).

6. Just why ten Alabama court judgments, two each in Etowah, St. Clair, Blount, Baldwin, and Tuscaloosa counties were obtained as if the common law method of obtaining an Alabama judgment predicated on a foreign judgment had been followed has not been explained. The common law method requires only one judgment from one Alabama court for which, under Ala.Code § 6–9–210, a certificate of judgment may be recorded in the Probate Office of any Alabama county or counties. The Gordons should not have been awarded ten Alabama judgments aggregating over $3,055,147.95 plus interest. They were entitled to only a judgment or judgments totaling more than $611,029.59 plus interest and costs. Likewise, the domestication process under the AUEFJA allows domestication in one Alabama county by compliance with Ala.Code § 6–9–232, –233 (1993 & Supp. 2003). Once domesticated by this AUEFJA process and potentially subject to the time constraints of Ala.Code § 6–9–233(c), a certificate of judgment may be obtained from the circuit court clerk of one Alabama county and recorded in any Probate Office of any Alabama County. *See* Ala.Code §§ 6–9–232, –210, –211 (1993).

filing party had chosen to enforce the foreign judgment by initiating a separate action in this state."); *Lawrence Systems, Inc. v. Superior Feeders, Inc.,* 880 S.W.2d 203, 208 (Tex.App.1994); *Lori Burke v. Iowa District Court of Boone County,* 546 N.W.2d 582, 583 (Iowa 1996) (citing to Chapter 626A.1 the Iowa adopted Uniform Enforcement of Foreign Judgments Act, Iowa Code § 626A.1 (2004)); *Burchett v. Roncari,* 181 Conn. 125, 434 A.2d 941, 943 (1980); *Wright v. Trust Company Bank,* 219 Ga.App. 551, 466 S.E.2d 74, 75 (1995) (stating that a filed, foreign judgment is endowed with same effect as a judgment of the court in which it is filed. "It is not a new action but merely picks up where it was left off in the state where rendered."); *Sunrise Turquoise, Inc. v. Chemical Design Co.,* 899 S.W.2d 856, 859 (Ky.Ct.App. 1995) ("The 1964 version [of the UEFJA] simplified the procedure of registration, by eliminating the need for the court, where the registration is sought, from having to issue an entirely new judgment."); *see also Redondo Construction Corp. v. United States,* 157 F.3d 1060, 1064–65 (6th Cir. 1998) (ruling that upon proper registration in Kentucky under its version of the UEF-JA, the holder of a foreign judgment has the equivalent of a Kentucky judgment); or (b) the AUEFJA, *see* Ala.Code § 6–9–232 ("...a judgment so filed has the same effect and is subject to the same proceedings, defenses ... as a judgment of a circuit court of this state..."). It is also not the usual practice of Alabama's circuit courts for the enforcement of a foreign judgment under the AUEFJA. Essentially each of the judgment orders of the Circuit Court of Etowah County, Circuit Court of St. Clair County, and Circuit Court of Blount County are redundant nothings having no force and effect! [7]

### C. Alabama's "Non–Uniform" Uniform Enforcement of Foreign Judgments Act—Two More Options—One Not Met, The Other Maybe.

■ The third and fourth modes for enforcing a foreign judgment in Alabama following its domestication require the plaintiff to follow one of two procedures set forth in the AUEFJA. Ala.Code §§ 6–9–230 to –238 (1993 & Supp.2003). Both methods for enforcing—here perfecting a lien against real estate—require registration of the foreign judgment. Under the AUEFJA processes, a party holding a foreign judgment needs to file in the office of the clerk of any circuit court of this state (i) a judgment authenticated in "accordance with an act of Congress or the statutes of this state"—this is what is required by Ala.Code § 6–9–232 (Supp.2003) and (ii) an affidavit setting forth certain additional information in the office of the clerk of any circuit court of this state which is the requirement set forth in Ala.Code § 6–9–233 (1993). The affidavit must "[set] forth the name and last known post office address of the judgment debtor, and the judgment creditor" and contain "a statement that the foreign judgment is valid, enforceable, and unsatisfied." Ala.Code § 6–9–233(a) (1993).

An Alabama provision governing authentication of foreign judgments "in accordance with one of [Alabama's] statutes" is contained in Alabama Rule of Civil Procedure 44(a)(1). *See Holley v. Rane,* 655

---

7. Part of the confusion on the Gordons' part most likely stems from their failure to grasp what the UEFJA and AUEFJA wrought in simplification and expedition of the domestication process where the registration by filing and docketing, at a minimum, once completed, is both the commencement of the domestic state's lawsuit *and* the domestic judgment entry not necessitating another judgment order from the domesticating state's court. *See* discussion *infra* at III.C(i).

So.2d 1068 (Ala.Civ.App.1995). Alabama Rule of Civil Procedure 44(a)(1) provides that to authenticate a foreign judgment, a party must provide a

> copy [of the judgment] attested by a person purporting to be the officer having the legal custody of the record, or by the officer's deputy. If the official record is kept without the state, the copy shall be accompanied by a certificate under oath of such person that such person is the legal custodian of such record and that the laws of the state require the record to be kept.

Ala. R. Civ. P. 44(a)(1). The proper authentication documents and affidavits for the Mississippi Federal Judgments were filed and docketed as foreign judgments in the circuit courts of Etowah, St. Clair, and Blount counties. Thus, each as filed with the respective clerks of the Circuit Courts of Etowah, St. Clair, and Blount counties was properly authenticated, filed, and docketed as is necessary under Ala.Code §§ 6–9–232, –233 (1993 & Supp.2003). The dockets of the clerk of the circuit court of each of these counties also evidence the mailing of notice of filing to the judgment debtor required under Ala.Code § 6–9–233(b). Therefore, no question exists regarding compliance with the registration process of the AUEFJA which means that the Mississippi Federal Judgments have each been domesticated.

### (i) UEFJA—Issuance and Recording Certificate of Judgment.

■ Following the filing of (1)(a) the authenticated foreign judgment and (b) the Ala.Code § 6–9–233 mandated affidavit in an Alabama circuit court, and giving (2) notice of filing of the foreign judgment to the judgment debtor, the party holding the foreign judgment may choose one of the two means under the AUEFJA for perfecting a lien on a judgment debtor's property.[8] The first one allows the party holding a foreign judgment to enforce it as if the judgment was obtained in an Alabama court by obtaining a certificate of judgment issued from the clerk of the circuit court where the affidavit and authenticated foreign judgment have been filed. *See* Ala.Code §§ 6–9–232; *see also* Ala.Code § 6–9–210. There is no provision for or requirement that a new judgment order of an Alabama court be issued before such a certificate of judgment may be obtained. Indeed, the opposite is what is intended

---

**8.** The precise point at which a foreign judgment is domesticated under the AUEFJA is uncertain. It is evident that on compliance with all of what is specified in both Ala.Code §§ 6–9–232 and 233, domestication has occurred. Whether it is earlier such as on registration of a foreign judgment by the filing and docketing set forth in Ala.Code § 6–9–232 and before either (i) the notice mailing for section 233(b) and/or (ii) the affidavit filing for section 233(a) is unclear. *Compare Lagman v. FDIC,* 789 So.2d 230, 231 (Ala.2000) (indicating compliance with the Ala.Code §§ 6–9–232, –233 filings are a minimum) *with Greene v. Connelly,* 628 So.2d 346, 350 (Ala. 1993) (discussing domestication while referencing only Ala.Code § 6–9–232); *see also Mike Smith Pontiac, GMC, Inc. v. Mercedes–Benz of North America, Inc.,* 356 Md. 542, 741 A.2d 462, 468–69 (1999) (filing under Mary-land's version of the UEFJA is the domestication); *Redondo Construction Corp. v. U.S.,* 157 F.3d 1060, 1065 (6th Cir.1998) (filing under § 426.955 of Kentucky's UEFJA equivalent to Ala.Code § 6–9–232 domesticates the foreign judgment). There is also a further complication arising from an optional, yet uniform provision of the UEFJA, enacted by Alabama, set forth in Ala.Code § 6–9–233(c), that "[n]o execution or other process for enforcement of a foreign judgment filed hereunder shall issue until 30 days after the date the judgment is filed." Whether issuance of a certificate of judgment for recording in a Probate Office or the filing of the foreign judgment allowed by Ala.Code § 6–9–237 are within the "other process for enforcement of a foreign judgment" language subject to the thirty day delay need not be resolved by this court.

under the AUEFJA. *See* Unif. Enforcement of Foreign Judgments Act § 1 *et seq.* (revised 1964), 13 pt. I. U.L.A. 155, 157, prefatory note (2002) (stating "[the UEFJA] relieves creditors and debtors of the additional cost and harassment of further litigation which could otherwise be incident to the enforcement of the foreign judgment."); *Redondo Construction Corp. v. U.S.,* 157 F.3d at 1065–66; *Fairbanks v. Large,* 957 S.W.2d 307, 308–10 (Ky.Ct.App. 1997); *Mike Smith Pontiac, GMC, Inc. v. Mercedes–Benz of North America,* 741 A.2d at 468–69; *Burke v. Iowa District Court of Boone County,* 546 N.W.2d at 583; *Walnut Equipment Leasing Co. v. Wen Lung Wu, et al.,* 920 S.W.2d 285, 286 (Tex.1996); *Lawrence Systems, Inc. v. Superior Feeders, Inc.,* 880 S.W.2d at 208; *Burchett v. Roncari,* 434 A.2d at 943; *Wright v. Trust Company Bank,* 466 S.E.2d at 75; *Sunrise Turquoise, Inc. v. Chemical Design Co.,* 899 S.W.2d at 859. At the latest under the UEFJA and the AUEFJA and once the authenticated judgment is filed and docketed as a foreign judgment by the circuit court clerk, the affidavit comporting with Ala.Code § 6–9–233(a) is filed, and the notice mailed constituting what Ala.Code § 6–9–233(b) specifies, this domesticates the foreign judgment and as registered is "the" judgment upon which the clerk of the Alabama circuit court may—unless demonstrated by

the judgment debtor that a stay is proper under Ala.Code § 6–9–234 (1993) and possibly, *see infra* note 8, the passage of time envisioned by Ala.Code § 6–9–233(c) has occurred—issue a certificate of judgment.[9]

Just as with the common law suit method for domestication of a foreign judgment, it is the filing in the Probate Office of the certificate of judgment issued by the clerk of the Alabama circuit court pursuant to the AUEFJA which may be utilized to create and perfect a lien against real property. Ala.Code § 6–9–232, 211 (1993 & Supp.2003). As with the two prior methods for domesticating and enforcing a foreign judgment, the Gordons did not receive and file a certificate of judgment issued by any Alabama circuit court clerk using this AUEFJA procedure. The result is that this method, which could have been employed under the AUEFJA, was not used by the Gordons to obtain a lien against any of Hugh Don Camp's properties in Etowah, St. Clair, and Blount counties. This much of what the AUEFJA allows is uniform among and between Alabama and the other jurisdictions enacting the revised version of the Uniform Enforcement of Foreign Judgments Act approved in 1964 by the National Conference of Commissioners on Uniform State Laws and the American Bar Association. Unif. Enforcement of Foreign Judgments Act

**9.** Recognition of the correct operation of the UEFJA and the AUEFJA—that on the compliance with the AUEFJA's filing, docketing, and notice provisions of Ala.Code § 6–9–232, –233 (1993 & Supp.1993)—is the latest point when the domestication occurs and creates an Alabama enforceable judgment without having a trial court enter another judgment, demonstrates why the entry of what are extra judgment orders in the Etowah Domestication Suits, St. Clair Domestication Suits, and Blount Domestication Suits are, effectively, nullities and, in reality, not second or subsequent judgments to those already established by the AUEFJA registration. *See Walnut*

*Equipment Leasing Co. v. Wen Lung Wu, et al.,* 920 S.W.2d 285, 286 (Tex.1996). *Redondo Construction Corp. v. U.S.,* 157 F.3d at 1065– 66; *Fairbanks v. Large,* 957 S.W.2d 307, 308– 10 (Ky.Ct.App.1997); *Mike Smith Pontiac, GMC, Inc. v. Mercedes–Benz of North America,* 741 A.2d at 468–69; *Burke v. Iowa District Court of Boone County,* 546 N.W.2d at 583; *Lawrence Systems, Inc. v. Superior Feeders, Inc.,* 880 S.W.2d at 208; *Burchett v. Roncari,* 434 A.2d at 943; *Wright v. Trust Company Bank,* 466 S.E.2d at 75; *Sunrise Turquoise, Inc. v. Chemical Design Co.,* 899 S.W.2d at 859.

§§ 1 *et seq.* (revised 1964), 13 pt. I. U.L.A. 155, 156 (2002).

### (ii) Non–Uniformity With Words Not So Clear: Filing of Authenticated, Copy of Authenticated, or Just a Copy.

■ The second AUEFJA scheme for enforcement of a foreign judgment also necessitates the Ala.Code § 6–9–232 specified filing in the circuit court of an authenticated foreign judgment plus the further affidavit along with giving of the Ala.Code § 6–9–233 notice to the judgment debtor. Then, Ala.Code § 6–9–237 may be followed to create and perfect the lien against a judgment debtor's properties. Alabama Code § 6–9–237 sets forth that:

> A copy of a foreign judgment authenticated in the manner described in Section 6–9–232 and filed in the circuit court may be recorded in the Probate Office as provided for judgments of the circuit courts of this state, and its being so filed shall have the same force and effect as the filing of a certificate of a judgment obtained in a circuit court of this state.

Ala.Code § 6–9–237 (1993) (emphasis added). In effect, Ala.Code § 6–9–237 provides that compliance with what it requires—that which must be filed under it—is a substitute for requirements of filing of a certificate of judgment in a Probate Office to create and perfect a "lien in the county where filed on all property of the defendant which is subject to levy and sale under execution...." Ala.Code §§ 6–9–210, –211. What must be filed under Ala.Code § 6–9–237 in a Probate Office is the last issue which is determinative of whether the Gordons obtained a perfected lien against Mr. Camp's properties in Etowah, St. Clair, and Blount counties. It also entails resolution of a portion of the AUEFJA which is not part of the UEFJA:

it is, thus, non-uniform in character and content.

### IV. Ambiguity.

Alabama Code § 6–9–237 does not, on its face, clearly define what document or documents must be filed in the Probate Office. There are multiple plausible interpretations. The first is that Ala.Code § 6–9–237 requires the holder of the foreign judgment to file in the Probate Office the same documents which are posited under Ala.Code § 6–9–232 as part of the authentication and domestication under the AUEFJA: a copy of what was filed in the circuit court clerk's office which would be a copy of the authenticated foreign judgment. As a copy of what was filed in the circuit court clerk's office, this would not be an authenticated copy. At least one commentator on this AUEFJA provision believes that Ala.Code § 6–9–237 calls for filing of a copy of the authenticated foreign judgment. Jesse P. Evans, III, Alabama Property Rights and Remedies § 30.1 (2d ed.1999).

Alternatively, it may be read to mean an authenticated copy of the foreign judgment must be filed. If either of these is the correct interpretation of the statute, then summary judgment will be granted in favor of the trustee and against the Gordons because they have not met Ala.Code § 6–9–237's requirements. This is so because the Gordons need to have filed more than what they did. Depending on the correct interpretation, they should have filed in the Probate Office either (i) authenticated copies of the foreign judgments or (ii) copies of precisely what was filed with the circuit court clerks to authenticate the foreign judgments.

The other interpretation—the one urged by the Gordons [10]—is that the hold-

---

10. The residual part of the Gordons' argu-

ment is that once Alabama judgment orders

er of the foreign judgment need file only a copy of the foreign judgment in the Probate Office. Essentially, this interpretation would mandate the copy of a foreign judgment be without any authentication or exemplification. If Ala.Code § 6–9–237 requires nothing more than filing of an unauthenticated copy of the foreign judgment in the Probate Office, then the Gordons are entitled to summary judgment.

The correct interpretation of Ala.Code § 6–9–237 is unclear. Neither the Supreme Court of Alabama, nor any of Alabama's intermediate appellate courts, has published an opinion on the interpretation of what this portion of Ala.Code § 6–9–237 necessitates. As the United States Court of Appeals for the Eleventh Circuit has set forth in *Jones v. Dillard's, Inc.*:

> Substantial doubt about a question of state law upon which a particular case turns should be resolved by certifying

the question to the state supreme court. Resolution in this way avoids the unnecessary practice of guessing the outcome under state law and offers the state court an opportunity to explicate state law.

*Jones v. Dillard's, Inc.*, 331 F.3d 1259, 1268 (11th Cir.2003) (internal citations omitted). *See, e.g., MCI Worldcom Network Services v. Mastec, Inc.*, No. 03–13022, 370 F.3d 1074, 2004 WL 1109880 (11th Cir. May 19, 2004); *SCI Liquidating Corp. v. Hartford Fire Insurance Co.*, 181 F.3d 1210, 1219 (11th Cir.1999); *In re McClintock*, 558 F.2d 732 (5th Cir.1977); John R. Brown, *Certification—Federalism in Action*, 7 Cumb. L.Rev. 455 (1977). Therefore, pursuant to the certification provision of the Alabama Constitution, Ala. Const. art. VI, amend. 328, § 6.02(b)(3), and Rule 18 of Alabama Rules of Appellate Procedure, this court respectfully certifies the following question of law to the Su-

---

were entered in the Etowah Domestication Suits, St. Clair Domestication Suits, and Blount Domestication Suits, these judgment orders had the effect for Ala.Code § 6–9–237 purposes of "authenticating" the Mississippi Federal Judgments. *A fortiori*, the Gordons argue that what they filed before judgment entry in the Alabama domestication actions is later authenticated by the judgment entries. Aside from the fact that this is not what occurs, this is a tacit admission by the Gordons that Ala.Code § 6–9–237 demands filing either precisely what Ala.Code §§ 6–9–232 requires which is an authenticated judgment or a copy of the authenticated judgment, not simply a copy of one or more of the Mississippi Federal Judgments. Added to this is the fact that the common law, Alabama lawsuit method for domestication would not authenticate the Mississippi Federal Judgments. What such a suit does is, if premised *solely* on the Mississippi Federal Judgments, domesticate these foreign judgments: that is, issue an Alabama judgment in the stead of the Mississippi Federal Judgments. *Continental Auto Ins. Underwriters v. Menuskin*, 222 Ala. 370, 132 So. 883 (1931).

Furthermore, the judgment orders of the Circuit Courts of Etowah, St. Clair, and Blount counties are not authorized under the AUEFJA. What occurred is that which are authentication, filing, and docketing procedures under Ala.Code §§ 6–9–232, –233 for domestication of a foreign judgment by registration were mistakenly believed by the Gordons to require the equivalent of what the filing of a traditional lawsuit would require, an actual Alabama judgment order, which it does not. For this reason, this Court rejects the Gordons' argument that the domestication suit judgment orders of the Alabama circuit courts authenticated for Ala.Code § 6–9–237 purposes the copies of the Mississippi Federal Judgments filed in the Probate Offices of Etowah, St. Clair, and Blount counties. Rather and under the AUEFJA, the authentication is controlled by Ala.Code §§ 6–9–232, –233 (1993 & Supp.2003) coupled with Ala. R. Civ. P. 44(a)(1). As previously set forth, the judgment orders of the various Alabama circuit courts were superfluous acts constituting legal inconsequentials, that is, each is devoid of any legal effect. *See e.g., Walnut Equipment Leasing Co. v. Wen Lung Wu, et al.*, 920 S.W.2d at 286.

preme Court of Alabama and the Honorable Justices thereof:

Does Ala.Code § 6–9–237 require the filing of (i) an unauthenticated or unexemplified copy of a foreign judgment in the Probate Office, (ii) a mere copy of the authenticated foreign judgment which was filed in the Alabama circuit court clerk's office, or (iii) an authenticated copy of such a foreign judgment?

This Court's wording of the issue certified to the Supreme Court of Alabama is not intended to limit the scope of the Alabama Court's consideration of the issues involved or the manner in which it responds to this certification. As the United States Court of Appeals for the Eleventh Circuit has indicated in *MCI Worldcom Network Services v. Mastec, Inc.*, No. 03–13022, 370 F.3d at 1079, 2004 WL 1109880, at *5 (11th Cir. May 19, 2004), and *Washburn v. Rabun*, 755 F.2d 1404, 1406 (11th Cir.1985), the independence accorded to the Alabama Supreme Court encompasses its restatement of the issue certified. The record in this case and the memorandum of each of the parties shall be sent to the Supreme Court of Alabama for its assistance in answering the question certified.

### V. Conclusion.

Resolution of the certified matter awaits a response from the Supreme Court of Alabama. Consequently, this Court reserves making a decision on the merits of the certified issue of Alabama law until such time as the Supreme Court of Alabama has had an opportunity to respond.