922 So.2d 893 (2005)
Max C. POPE, as trustee of the bankruptcy estate of Hugh Don Camp
v.
Tony GORDON et al.
No. 1031384.
Supreme Court of Alabama.
June 17, 2005.
Rehearing Denied August 26, 2005.
*894 Jerry W. Schoel and David D. Schoel of The Schoel Law Firm, Birmingham, for plaintiff.
R. Scott Williams and Michael C. Skotnicki of Haskell Slaughter Young & Rediker, LLC, Birmingham, for defendants.
PER CURIAM.
Pursuant to Rule 18, Ala. R.App. P., this Court accepted the following certified question from the United States Bankruptcy Court for the Northern District of Alabama, Southern Division:
"Does Ala.Code [1975,] § 6-9-237 require the filing of (i) an unauthenticated or unexemplified copy of a foreign judgment in the Probate Office, (ii) a mere copy of the authenticated foreign judgment which was filed in the Alabama circuit court clerk's office, or (iii) an authenticated copy of such a foreign judgment?"

Facts and Procedural History
In January 2001, Tony Gordon, Tim Gordon, and Julian Gordon obtained various judgments against Hugh Don Camp in the United States District Court for the Southern District of Mississippi ("the Mississippi judgments"). In an effort to collect those judgments, the Gordons attempted to create liens in Alabama against property owned by Camp located in Etowah, St. Clair, and Blount Counties[1] by filing the Mississippi judgments with the clerks of the circuit courts located in those counties. Those filings included copies of the Mississippi judgments with exemplification certificates attached setting forth that the copies of the judgments so filed were true copies. The Gordons also filed in each of the circuit courts an affidavit of their counsel, in which he attested (1) that he represented the Gordons; (2) that the address given in the affidavit for the Gordons was their correct address; (3) that the address given in the affidavit for Camp was Camp's last known address; and (4) that the Mississippi judgments were valid, enforceable, and unsatisfied. Each circuit court docketed the case as a nonjury civil action involving "foreign judgments." The Gordons also filed copies of the Mississippi judgments in the offices of the judges of probate of Etowah, St. Clair, and Blount Counties. The copies filed in the probate judges' offices had no exemplification certificates attached and were otherwise unauthenticated.
Pursuant to Ala.Code 1975, § 6-9-233, Camp was given notice that the Mississippi judgments had been filed in the circuit courts of Etowah, St. Clair, and Blount Counties. The circuit courts subsequently purported to enter judgments in favor of *895 the Gordons based on the Mississippi judgments.
In September 2001, a petition of bankruptcy was filed against Camp in the United States Bankruptcy Court for the Northern District of Alabama, Southern Division ("the Bankruptcy Court"). On September 18, 2002, Max C. Pope was appointed trustee of the bankruptcy estate.
On September 23, 2003, Pope filed a complaint in the Bankruptcy Court seeking, among other things, a declaration that the Gordons had no liens against property owned by Camp in Etowah, St. Clair, and Blount Counties. Pope later moved for a summary judgment, arguing that the Gordons had not properly perfected a lien on Camp's property in those counties.
The Bankruptcy Court, in an extensive and scholarly memorandum opinion, held that the Gordons had failed to use any of several options for enforcing the Mississippi judgments and securing proper liens in Alabama. In re Camp, 310 B.R. 634 (Bankr.N.D.Ala.2004). The Bankruptcy Court did note, however, that it was unclear whether the Gordons had properly secured a lien under Ala.Code 1975, § 6-9-237, which the Bankruptcy Court believes is ambiguous. The Bankruptcy Court thus certified this question.

Discussion

I.
Alabama has adopted the Uniform Enforcement of Foreign Judgments Act (Rev. 1964) ("UEFJA"). See Act No. 86-713, Ala. Acts 1986, codified at Ala.Code 1975, § 6-9-230 et seq. ("the Act"). The Act provides a means by which a foreign judgment can be "domesticated" in this State. First, to domesticate a foreign judgment, a judgment creditor may file a copy of the foreign judgment in any circuit court in the State:
"A copy of any foreign judgment authenticated in accordance with an act of Congress or the statutes of this state may be filed in the office of the clerk of any circuit court of this state. A clerk of any circuit court shall note the filing in a special docket set up for foreign judgments...."
Ala.Code 1975, § 6-9-232. This provision has been understood to require that the copy of the foreign judgment filed in circuit court be an authenticated copy. See, e.g., Ex parte Lyon Fin. Servs., Inc., 775 So.2d 181, 183 (Ala.2000), and Nix v. Cassidy, 899 So.2d 998, 1000 (Ala.Civ.App. 2004). See also Rule 44(a)(1), Ala. R. Civ. P. (governing the authentication of official records), and Gilpin Brokerage Co. v. Northwest Acceptance Corp., 465 So.2d 1161 (Ala.Civ.App.1985) (discussing generally the authentication of foreign judgments under Rule 44(a)(1)).
At the same time that the authenticated foreign judgment is filed, the judgment creditor must file an informational affidavit with the clerk of the court in compliance with the requirements of Ala.Code 1975, § 6-9-233(a):
"(a) At the time of filing, the judgment creditor, or his lawyer, shall make and file with the clerk of the circuit court an affidavit setting forth the name and last known post office address of the judgment debtor, and the judgment creditor. In addition, such affidavit shall include a statement that the foreign judgment is valid, enforceable, and unsatisfied."
After both the foreign judgment and the informational affidavit have been filed in the circuit court, the clerk is required to mail notice to the judgment debtor in compliance with Ala.Code 1975, § 6-9-233(b):
"(b) Promptly upon the filing of the foreign judgment and the affidavit, the clerk shall mail notice of the filing of the *896 foreign judgment to the judgment debtor at the address given and shall make a note of the mailing in the special docket. The notice shall include the name and post office address of the judgment creditor and the judgment creditor's lawyer, if any, in this state. In addition, the judgment creditor may mail notice of the filing of the judgment to the judgment debtor and may file proof of mailing with the clerk. Lack of mailing notice of filing by the clerk shall not affect the enforcement proceedings if proof of mailing by the judgment creditor has been filed."
Alabama Code 1975, § 6-9-233(c), then provides:
"(c) No execution or other process for enforcement of a foreign judgment filed hereunder shall issue until 30 days after the date the judgment is filed."
Finally, Ala.Code 1975, § 6-9-235, requires the payment of a filing fee.
At the completion of these filing requirements, the foreign judgment becomes domesticated.[2] A judgment creditor may then create a lien on the judgment debtor's property by obtaining a certificate of judgment from the circuit court and filing that certificate in the office of the judge of probate of any county. See Ala.Code 1975, § 6-9-210.[3] This filing creates a lien on property of the judgment debtor in that county. See Ala.Code 1975, § 6-9-211.
The Bankruptcy Court held that the Gordons had properly domesticated the Mississippi judgments under the Act. Camp, 310 B.R. at 645. Authenticated copies of the judgments were filed in the circuit courts of Etowah, St. Clair, and Blount Counties in accord with § 6-9-232; the Gordons' counsel filed an informational affidavit in compliance with § 6-9-233(a); proper notice to Camp of the filing of the judgments was accomplished under § 6-9-233(b); and the 30-day period of § 6-9-233(c) had elapsed. The Gordons did not, however, file a certificate of judgment issued by any of the circuit courts in the office of the judge of probate in any county.
The Bankruptcy Court noted that in this case the Gordons had another option available under the Act. Specifically, a judgment creditor may use Ala.Code 1975, § 6-9-237, which provides:
"A copy of a foreign judgment authenticated in the manner described in Section 6-9-232 and filed in the circuit court may be recorded in the probate office as provided for judgments of the circuit courts of this state, and its being so filed shall have the same force and effect as the filing of a certificate of a judgment obtained in a circuit court of this state."
Section 6-9-237 is a nonuniform addition to Alabama's version of the UEFJA, which *897 provides for the creation of a judgment lien by the recordation of a foreign judgment. Clearly, § 6-9-237 was designed to provide a simpler, quicker process for effecting a lien in conjunction with a domesticated foreign judgment than would otherwise be available under the alternative procedure of obtaining a certificate of judgment issued from the clerk of the circuit court in which the informational affidavit and the authenticated foreign judgment had been filed.
The Bankruptcy Court noted, however, that precisely what must be filed in the probate office was unclear:
"Alabama Code [1975,] § 6-9-237[,] does not, on its face, clearly define what document or documents must be filed in the Probate Office. There are multiple plausible interpretations. The first is that Ala.Code § 6-9-237 requires the holder of the foreign judgment to file in the Probate Office the same documents which are posited under Ala.Code § 6-9-232 as part of the authentication and domestication under [the Act]: a copy of what was filed in the circuit court clerk's office which would be a copy of the authenticated foreign judgment. As a copy of what was filed in the circuit court clerk's office, this would not be an authenticated copy....
"Alternatively, it may be read to mean an authenticated copy of the foreign judgment must be filed....
"The other interpretation  the one urged by the Gordons  is that the holder of the foreign judgment need file only a copy of the foreign judgment in the Probate Office. Essentially, this interpretation would mandate the copy of a foreign judgment be without any authentication or exemplification."
Camp, 310 B.R. at 647-48 (footnote omitted).

II.
Alabama Code 1975, § 6-9-238, provides that the Act "shall be so interpreted and construed as to effectuate its general purpose to make uniform the laws of those states which enact it." Moreover, the purpose of the UEFJA "is to give the holder of a foreign judgment the same rights and remedies as the holders of domestic judgments." 30 Am.Jur.2d Executions and Enforcements of Judgments § 778 (2005).
"`This Court has held that the fundamental rule of statutory construction is to ascertain and give effect to the intent of the Legislature in enacting a statute. IMED Corp. v. Systems Engineering Assocs. Corp., 602 So.2d 344, 346 (Ala. 1992). If possible, a court should gather the legislative intent from the language of the statute itself. Advertiser Co. v. Hobbie, 474 So.2d 93 (Ala.1985).'"
Jefferson County v. Acker, 885 So.2d 739, 742-43 (Ala.2003) (quoting Norfolk Southern Ry. v. Johnson, 740 So.2d 392, 396 (Ala.1999)). In construing statutes, this Court does not interpret provisions in isolation, but considers them in the context of the entire statutory scheme. Siegelman v. Alabama Ass'n of School Bds., 819 So.2d 568, 582 (Ala.2001). Moreover, in ascertaining legislative intent, we must look to the entire act instead of isolated phrases or clauses. Lambert v. Wilcox County Comm'n, 623 So.2d 727, 729 (Ala.1993).
The certified question in this case presents a narrow issue: what does § 6-9-237 require be "recorded" in the probate office? The appellate courts of this State have issued no decisions on this issue.
The first portion of § 6-9-237, which reads, in part, "A copy of a foreign judgment authenticated in the manner described in Section 6-9-232 ... may be recorded in the probate office," parallels the language in the first sentence of § 6-9-232: *898 "A copy of any foreign judgment authenticated in accordance with an act of Congress or the statutes of this state may be filed in the office of the clerk of any circuit court of this state." The phrase "authenticated in the manner described in Section 6-9-232" used in § 6-9-237 refers to the instruction in § 6-9-232 on how the "copy" of the "foreign judgment" is to be authenticated. Reading the two statutory provisions in pari materia, § 6-9-237 incorporates the requirement in § 6-9-232 that the copy of the foreign judgment recorded in the probate office must be authenticated. The first portion of § 6-9-237 could thus essentially be read to state: "A copy of a foreign judgment authenticated [in accordance with an act of Congress or the statutes of this state] ... may be recorded in the probate office...."
Additionally, the use of the past tense in the phrase "and filed in the circuit court" in § 6-9-237 indicates that the filing required by § 6-9-232 and § 6-9-233 must have already taken place in the circuit court before the filing in the probate office. Moreover, § 6-9-232 allows the filing of a foreign judgment in "any" circuit court, but § 6-9-237 provides that the foreign judgment filed in "the circuit court may be recorded in the probate office." This suggests that in order for a foreign judgment to be recorded pursuant to § 6-9-237, the judgment may be filed only in the probate office of the same county as the circuit court in which the foreign judgment is being domesticated.

Conclusion
Section 6-9-237 requires that for purposes of recording a foreign judgment in the probate court an authenticated copy of the foreign judgment that has been authenticated and properly filed in a circuit court for domestication under the Act be filed in the probate office of the county in which the foreign judgment was filed for domestication.
QUESTION ANSWERED.
NABERS, C.J., and WOODALL, STUART, SMITH, BOLIN, and PARKER, JJ., concur.
LYONS, J., concurs in the rationale in part and concurs in the result.
SEE and HARWOOD, JJ., dissent.
LYONS, Justice (concurring in the rationale in part and concurring in the result).
I would exercise this Court's prerogative and rephrase the certified question posed by the United States Bankruptcy Court to read as follows:
"Does the filing of a photocopy of a foreign judgment, unaccompanied by documents purporting to authenticate that foreign judgment, in the probate office of a county constitute a lien on the property of the judgment debtor located in that county?"
I would then answer the question in the negative.
I agree with the main opinion to the extent that it concludes that § 6-9-237 should be interpreted as stating: "A copy of a foreign judgment authenticated [in accordance with an act of Congress or the statutes of this state] ... may be recorded in the probate office...." I further agree with the main opinion's conclusion that the use of the past tense in the phrase "and filed in the circuit court" means that the filing pursuant to §§ 6-9-232 and 6-9-233 must have already taken place in the circuit court before the filing in the probate office can be accomplished and that the use of the article "the" in that phrase means that the subsequent filing must be in the probate office of the county in which *899 the foreign judgment has been filed for domestication.
I do not address the dicta in the main opinion describing § 6-9-210  which provides the procedure applicable to filing, in a probate office of this State, a judgment entered in any court of this State or in any court of the United States held in this State  as applicable to foreign judgments.
HARWOOD, Justice (dissenting).
I respectfully dissent. I do not agree with the conclusion of the main opinion that Ala.Code 1975, § 6-9-237, requires that the copy of the foreign judgment recorded in the probate office must be an "authenticated" copy. The construction the main opinion places on the opening phrase of § 6-9-237 in effect inserts commas not supplied by the drafter: "A copy of the foreign judgment[,] authenticated in the manner described in Section 6-9-232[,] and filed in the circuit court may be recorded...."
As the main opinion notes, the use of the past tense "filed in the circuit court" refers to an event that must already have taken place before the recordation in the probate court is attempted. I agree that the foreign judgment must be recorded in the probate office of the same county as the circuit court in which the judgment was filed for domestication. If we read § 6-9-237 otherwise, as envisioning that a copy of the foreign judgment could be recorded in a probate office in a county different from the one in which the circuit court of "filing" is located, the result would be irrational: regardless of whether an authenticated or unauthenticated copy of a foreign judgment was recorded in the probate court, a person seeking to assess the legal efficacy of the lien purportedly occasioned by that recordation would not know in which circuit court to check to confirm that the filing in the circuit court had indeed taken place. Because the filing in the circuit court and the recordation in the probate court must take place in the same county, one encountering a foreign judgment recorded in the probate office of a county need only check in the circuit court of that county to see if the necessary antecedent filing has taken place. That being so, the legislature would not have needed to require that the copy of the foreign judgment recorded in the probate office be an authenticated version, because an authenticated version necessarily would be on file in the circuit court and the probate court recordation is not effectual unless such an authenticated copy of the foreign judgment is on file. Thus, there is no need to require that the copy of the judgment recorded in the probate office also, and duplicatively, be an authenticated copy. Consequently, I read § 6-9-237 to say that "a copy of a foreign judgment" that has already been "authenticated in the manner described in Section 6-9-232" and has already been "filed in the circuit court" may be recorded in the probate court of the same county.
SEE, J., concurs.
NOTES
[1] The Gordons also attempted to file liens against property in Tuscaloosa County and Baldwin County; however, the parties later stipulated that the Gordons had secured no liens on property in those counties.
[2] As the Bankruptcy Court noted, it is unclear whether the foreign judgment becomes "domesticated" at the time the filing requirements under § 6-9-233 are completed or after the expiration of the 30-day period found in § 6-9-233(c). Although it appears that § 6-9-233(c) merely stays execution of the judgment, and not domestication, resolution of this issue is not before us or necessary in this case.
[3] Alabama Code 1975, § 6-9-210, provides, in pertinent part:

"The owner of any judgment entered in any court of this state or of the United States held in this state may file in the office of the judge of probate of any county of this state a certificate of the clerk or register of the court by which the judgment was entered, which certificate shall show the style of the court which entered the judgment, the amount and date thereof, the amount of costs, the names of all parties thereto and the name of the plaintiff's attorney.... Such certificate shall also show the address of each defendant or respondent, as shown in the court proceedings."